STATE BANK OF WHEATLAND v. BAGLEY BROS.
(Fidelity & Deposit Co. of Maryland, Intervener)
(No. 1708; May 10, 1932; 11 Pac. (2d) 572)

248

For the defendants and appellants there was a brief by *Kinkead* and *Pearson,* of Cheyenne, Wyoming, and *W. B. Jones,* of Wheatland, Wyoming, and oral argument by *Mr. W. C. Kinkead* and *Mr. A. A. Pearson.*

For the plaintiff and respondent there was a brief by *M. A. Kline,* of Cheyenne, Wyoming, and *O. O. Natwick,* of Wheatland, Wyoming, and oral argument by *Mr. Kline.*

254

*Kinkead* and *Pearson,* of Cheyenne, Wyoming, and *W. B. Jones,* of Wheatland, Wyoming, in reply.

RINER, Justice.

This is a proceeding by direct appeal to obtain review of a judgment of the District Court of Platte County. The action was commenced February 1, 1929 by The State Bank of Wheatland, hereinafter generally referred to as the "bank" or as the "plaintiff," against "Bagley Brothers, a co-partnership, composed of John R. Bagley and Nathan G. Bagley, John R. Bagley as surviving partner of said co-partnership, Mamie E. Bagley as Executrix of the Last Will and Testament of Nathan G. Bagley, deceased, and Mamie E. Bagley and Russell Bagley, heirs at law of said Nathan G. Bagley, deceased," as defendants. Subsequently, herein, the co-partnership will be usually mentioned as the "firm" and Mamie E. Bagley as personal representative of her deceased husband, Nathan G. Bagley, will generally be designated as "executrix."

The action was brought originally to obtain a personal judgment against the firm and John R. Bagley as surviving partner, on twelve promissory notes of varying amounts given by the firm to the plaintiff as payee, on which obligations, the total sum of $29,459.57 was claimed to be due on account of principal, accrued interest and attorneys' fees. These notes were severally set forth in the first twelve causes of action included in plaintiff's petition. The remainder of that pleading embraced causes of action numbered thirteen to nineteen, inclusive, for the foreclosure of certain mortgages and a pledge of corporate stock averred as given by the firm or its surviving partner to plaintiff to secure the payment of the aforesaid notes. More in detail, the thirteenth and fourteenth causes of action, respectively, counted the former upon a chattel mortgage covering enumerated livestock, harness, wagons, camp equipment and ranch machinery, the instrument being alleged to have been given by the partners to secure the payment of the note for $5,000 sued upon in the first cause of action, the latter upon a real estate mortgage covering certain lands described by section subdivision, township and range, and also three lots located

in the town of Wheatland, Wyoming, and alleged to have been given by the firm to plaintiff to secure the same obligation as the chattel mortgage aforesaid, as well as "another note for $10,000," both of these mortgages being dated September 24, 1925 and signed "J. R. Bagley, N. G. Bagley." In passing, it may be stated that the title to the real property thus encumbered at that time stood, some in the names of John R. Bagley and Nathan G. Bagley, jointly, some in Nathan's name and some in John's.

The fifteenth cause of action pleaded a real estate mortgage covering the identical property described in that dated September 24, 1925, as aforesaid, except the town property, which was omitted, this instrument being alleged to have been given by the firm to plaintiff to secure the payment of the $5,000 note already mentioned and another note for $10,000 of even date with the instrument itself, said note being a renewal of the earlier obligation for the same amount. The fourth cause of action of the petition set forth plaintiff's claim upon this note for $10,000. The mortgage thus pleaded was dated July 15, 1926 and was signed "N. G. Bagley, J. R. Bagley." In this cause of action, it is also claimed that through mutual mistake of the parties in drawing up this mortgage, certain indebtedness intended by them to be secured thereby was not mentioned, the words "and other sums of money to be advanced by said The State Bank of Wheatland" being omitted. It was also claimed that certain described real property totaling eleven hundred acres (title to most of which stood in the name of Nathan G. Bagley) was likewise, through mutual mistake, omitted from the instrument. The sixteenth cause of action counted upon a chattel mortgage, apparently embracing, also, the same personal property as was included in that of date September 24, 1925, with some accretions thereto, and alleged to have been given by the firm to plaintiff to secure the payment of the $10,000 note dated July 15, 1926, above mentioned. This instrument was also of even date with the

obligation it secured and was signed by "N. G. Bagley, J. R. Bagley." The seventeenth cause of action set forth a chattel mortgage undated as to month or day, the year date being given as "1927" and acknowledged by the mortgagor "on this .... day of August, 1927." This instrument covered certain horses, mules, plows, scrapers, etc. belonging to the firm grading and road outfit then being used in Weston County, Wyoming, some five wagons, included in said equipment, being recited as located in Platte County. By its terms, it secured the payment of "up to twenty thousand dollars * * * according to the conditions of any notes signed by Bagley Brothers by John Bagley bearing date Aug. 5th, 1927 and Dec. 31st, 1927 or any notes already signed and past due," and given by Bagley Bros. by John Bagley to the plaintiff. This instrument was signed "Bagley Bros. by J. R. Bagley, J. R. Bagley." The eighteenth cause of action counted upon a real estate mortgage including certain lands enumerated by section, township and range, and reciting that it was given to secure the payment of $10,000 evidenced by five promissory notes whose dates and amounts were respectively: April 29, 1926 — $1,500, June 4, 1926 — $1,000, September 28, 1926 — $1,500, November 1, 1926 — $3,000, November 4, 1926 — $3,000. These are the notes sued upon in plaintiff's second, third, fifth, sixth and seventh alleged causes of action. In this connection, it may be noted that the sixth cause of action was abandoned, it being established at the trial that no consideration ever passed between the parties for the note of November 1, 1926 for $3,000. It may be here also noted that the title to the lands affected by this mortgage stood either in the name of the partners jointly or in the name of either, but said lands had not previously been included in the mortgages theretofore executed. The instrument itself was dated October 1, 1927, was signed "Bagley Bros. by J. R. Bagley, J. R. Bagley" and was alleged to have been given by John R. Bagley as surviving partner of the firm to the plaintiff.

The nineteenth cause of action averred a pledge to the plaintiff of twenty-two shares of stock in a corporation known as the Service Filling Station Company by Nathan G. Bagley and John R. Bagley, on July 15, 1926, to secure repayment to it of all monies thereafter loaned to the firm by the plaintiff and to secure an extension of time of payment on overdue notes. The title to this stock stood, ten shares in the name of John R. Bagley and twelve shares in the name of Nathan G. Bagley.

Subsequently and on December 10, 1929, by leave of court, the plaintiff filed an amendment to its petition adding a twentieth cause of action alleging in brief that under an arrangement made by plaintiff and the firm prior to the death of Nathan G. Bagley, the plaintiff loaned at different times to John R. Bagley as surviving partner, the total sum of $13,000 which was used by him in completing construction contracts of the firm and in payment of its debts. The dates of these loans and their amounts were stated to be respectively: Sept. 28, 1926—$1,500, Nov. 1, 1926—$3,000, Nov. 4, 1926—$3,000, March 28, 1927—$1,000, May 1, 1927 —$2,000, July 20, 1927—$500, July 26, 1927—$1,000, and July 28, 1927—$1,000. These amounts, in the order named, were evidenced by the several notes sued upon in causes of action numbered five to twelve, inclusive. Other than the sum of $700 paid November 12, 1927, all this indebtedness is alleged to remain unpaid. To secure these loans, it was averred that the chattel mortgage mentioned above in the description of plaintiff's seventeenth cause of action and the real estate mortgage upon which the eighteenth cause of action is based, were given to plaintiff by John R. Bagley as surviving partner of the firm.

The petition also sets forth that the defendants Mamie E. Bagley and Russell Bagley and Mamie E. Bagley as executrix claim some interest in the property described in plaintiff's thirteenth to nineteenth causes of action, inclusive, but that such interest is inferior to plaintiff's asserted liens thereon.

Prior to the addition of the twentieth cause of action as above indicated and by order of court made May 24, 1929, plaintiff was allowed to and did amend the prayer of its petition so as to withdraw all demand for a money judgment against the defendants or any of them and to ask for equitable relief only—the reformation of the real estate mortgage counted on in plaintiff's fifteenth cause of action and the foreclosure thereof as reformed, the foreclosure of all the other mortgages pleaded, as well as the pledge of the several certificates of stock, the sale of all the properties affected by these incumbrances and the due application of the proceeds of such sales to the liquidation of the indebtedness found to be due; also, that each of the defendants be required to set forth their respective claims and interest in the property described in the petition and that the same be adjudged inferior to the liens claimed by the plaintiff.

The answers of the defendants Mamie E. Bagley as executrix, Mamie E. Bagley and Russell Bagley as heirs at law of Nathan G. Bagley, deceased, though rather voluminous, consist, generally speaking, of denials of the allegations of plaintiff's petition, the claim of payment of the indebtedness pleaded therein as well as all obligations of the firm to plaintiff, the want of authority of the surviving partner, John R. Bagley, to incur any such indebtedness after the death of his co-partner, Nathan G. Bagley, or to give notes to evidence and mortgages to secure the same so as to affect the interest of said defendants in property, the title to which stood of record in the name of Nathan G. Bagley. These defendants prayed for the dismissal of plaintiff's petition, that all the mortgages pleaded by plaintiff be cancelled and that the executrix have judgment against the plaintiff on her asserted counterclaim for the conversion of the alleged pledged shares of stock in the Service Filling Station Company.

The defendant John R. Bagley, after allowing the time within which he was required to answer the petition to elapse without responding in any way thereto, subsequently

and on April 3, 1929, filed an answer individually and as surviving partner of the firm wherein he admitted the allegations of plaintiff's petition and of each and every cause of action therein set forth, alleging also:

"That all property, real or personal and of whatever description, except for personal effects such as clothing and jewelry, belonging to this defendant or to Nathan G. Bagley, deceased, was and is the property of the co-partnership composed of John R. Bagley and Nathan G. Bagley and known as Bagley Brothers; that said property was paid for with partnership money and was bought for partnership purposes; that all money belonging to or in the possession of either member of said partnership was and is the property of said co-partnership; and that all outstanding obligations of either of the members of said co-partnership were and are the obligations of said co-partnership."

By stipulation of the parties dated May 23, 1929 and order of court made thereon May 24, 1929, Mamie E. Bagley as executrix was "authorized and permitted to appear in the above entitled action in behalf of said co-partnership of Bagley Brothers and to make or allege whatever defenses she may conceive that said co-partnership might have to plaintiff's cause of action."

Thereafter and on June 24, 1929, Mamie E. Bagley as executrix filed an answer on behalf of Bagley Bros., a co-partnership, which, in the main adopted the answer previously made by her as executrix and also, on behalf of said firm, repudiated the answer filed on its behalf by John R. Bagley on the third day of April, 1929 and denied "each and every of the allegations and admissions thereof."

Replies were filed by plaintiff setting out general and special denials of the new matter embraced in the answers of Mamie E. Bagley, executrix, Mamie E. Bagley, individually, and Russell Bagley.

On June 27, 1929, the Fidelity and Deposit Company of Maryland, hereinafter designated as the "intervenor,"

pursuant to leave given by the court, filed its "petition in intervention." So far as material here, the claim therein made to the property affected by the mortgages hereinabove described appears to be based upon intervenor's asserted position as a creditor of the firm for an amount in excess of $20,000. It is alleged that this obligation arose in consequence of intervenor's becoming surety on a bond given by the firm to the State of Wyoming for the due performance of a contract between said firm and the state for the construction of a portion of the New-castle-Lead State Highway; that the firm defaulted in the performance of said contract and intervenor was compelled to pay numerous claims against said firm under the terms of said bond; that on June 4, 1926, in order to secure the execution of this bond by intervenor as the surety thereon, the firm delivered to it an agreement of indemnity which is set out as an attached exhibit in full and which, among other things, provided that, in the event of breach of the highway contract by the firm, the latter agreed to and did assign to intervenor as collateral, to secure any indebtedness or liabilities that might thereby be incurred by intervenor, all their interest in "all machinery, plant tools and materials which are now or may hereafter be in, about or upon the site of said work or elsewhere for the purposes thereof"; that D. W. Brice, president of the plaintiff, was intervenor's agent at that time and said agreement and bond was executed with the knowledge of said Brice and the plaintiff. It is alleged also that the real estate mortgage counted on in plaintiff's eighteenth cause of action was without consideration, executed after the indemnity agreement aforesaid, within plaintiff's knowledge, and was an attempt to exclude intervenor as "the largest unsecured creditor of Bagley Bros." from participation in the proceeds of an asset in which intervenor was entitled to share. The intervenor

sought as relief, in the main, that said mortgage be cancelled, reformation of the mortgage relied upon in plaintiff's fifteenth cause of action be denied and that the property described in the mortgage whose cancellation is asked be adjudged liable for intervenor's claim.

May 24, 1930, plaintiff filed an answer to this petition in intervention consisting principally of specific denials of the allegations therein contained and averments to the effect that intervenor's rights, if any, were subordinate to those of the plaintiff in the property covered by the mortgages sought to be foreclosed and that the agreement of indemnity was never filed for record in the office of the county clerk of Platte County, Wyoming, was never acknowledged as required by the law of this state and that intervenor never took or attempted to take into its possession any of the personal property described in said agreement and that instrument gave intervenor no other or further rights in the property affected by the mortgages aforesaid than was possessed by any other contract creditor of the firm. The reply of intervenor put in issue the affirmative allegations contained in this answer.

The cause came on for trial to the court without a jury on July 10, 1930, was taken under advisement and on December 24, 1930, a final decree was filed. It was necessarily quite extended in its provisions and at this point it will suffice to state generally its purport. More particular reference to its terms will hereinafter be made as required in the discussion of the various contentions made by the several parties upon the record submitted. In outline, then, the decree determined the amount due plaintiff on the several notes sued upon in plaintiff's causes of action numbered one to twelve, inclusive, omitting the sixth which was abandoned by plaintiff as heretofore stated; it found that the chattel mortgages as described in plaintiff's thirteenth, sixteenth and seventeenth causes of action and the real estate mortgage set forth in plain-

tiff's fourteenth cause of action should be foreclosed, the property covered thereby sold and the proceeds applied to the indebtedness as directed; it found that due to a mutual mistake of the parties, the omissions as pleaded in plaintiff's fifteenth cause of action had been made in the real estate mortgage therein described and that this mortgage should be reformed, and as reformed, should be foreclosed and the proceeds of the sale of the property applied as directed; it ordered the sale of the twenty-two shares of stock of the Service Filling Station Company found to have been pledged as collateral by John R. Bagley to the plaintiff, pursuant to an agreement between plaintiff and himself and his brother made during the latter's lifetime, to secure payment of any money that thereafter might be loaned the firm by plaintiff, and the proceeds of such sale applied as directed; it adjudged attorneys' fees to the plaintiff in the total sum of $1,000, the amount of $200 being allowed in each of the foreclosures ordered relative to the instruments relied upon in plaintiff's thirteenth, fourteenth, fifteenth and seventeenth causes of action and also in connection with the foreclosure of the adjudged pledge of stock aforesaid; it found that the indemnity agreement relied upon by intervenor as above described was in effect a chattel mortgage and, it not having been filed or recorded, by law was void as to plaintiff and created no interest in the property mentioned therein superior to plaintiff's interest; that Bagley Bros. and John R. Bagley as surviving partner had a legal right to prefer plaintiff over intervenor and accordingly, it was adjudged that the intervenor's petition should be dismissed at its costs. The decree also found that the real estate acquired by Nathan G. Bagley and John R. Bagley under the Federal Homestead Act became the individual and separate property of the parties named; that the real estate mortgage described in plaintiff's eighteenth cause of action as given to it by John R.

Bagley as surviving partner on October 1, 1927 was void as to the firm and the executrix, John R. Bagley being at that time without authority to bind the firm property to secure the payment of any prior indebtedness of said firm to the plaintiff and said mortgage was adjudged to confer no interest upon the plaintiff to the real estate described therein.

To each of the several portions of the decree adverse to them, each of the parties to the cause reserved their due exceptions and each, except John R. Bagley, have prosecuted separate appeals (Nos. 1707, 1708, 1709) upon the record made in the case. In the appeal now under consideration (No. 1708) the review proceeding is on behalf of the firm as represented by the executrix, the executrix and Mamie E. Bagley, individually, and the other parties to the cause as mentioned above are respondents.

Introductory to a consideration of the questions involved in this appeal, it may be stated that the following facts were either admitted or established by the record: That Bagley Brothers was a co-partnership composed of John R. Bagley and Nathan G. Bagley and prior to the death of the latter on August 18, 1926, was engaged in carrying on a general ranching business in Platte County, Wyoming, and also a general contract and road construction business in this state; that prior to Nathan's death, the firm borrowed sundry sums of money from the plaintiff, giving it certain promissory notes and mortgages involved in this litigation on both personal property and real property, the title to which was of record in the name of either or both partners; that at the time of Nathan G. Bagley's death, the firm was engaged in the performance of a contract made by the firm with the State of Wyoming for highway construction near the town of Buffalo in this state and that on or about the eighth day of June, 1926, the firm entered into another

contract with the State of Wyoming for the construction of a part of the Newcastle-Lead State Highway in Weston County, Wyoming, and that work under this contract had been commenced a short time before Nathan G. Bagley's death; that thereafter, Mamie E. Bagley, his wife, was duly appointed and qualified as executrix of his will; that about the same time as she undertook these duties, John Bagley gave bond and took possession of the firm property as surviving partner, under sections 6838-6839 Wyo. Comp. St. 1920 (§§ 88-2505, 88-2506, Wyo. Rev. St. 1931); that thereafter he continued to be in charge of and conducted matters relating to the firm's business and borrowed various sums of money from the plaintiff at different times during the period following the death of his brother up to and including the 28th day of July, 1927, delivering to plaintiff as security therefor certain notes and mortgages which are also in question in this case; that plaintiff ceased to loan John R. Bagley further funds some time in September, 1927 and that on September 30 of that year, the Wyoming State Highway Commission adopted a resolution declaring him in default and calling upon the intervenor to complete the work required by the Newcastle-Lead State Highway contract aforesaid under the terms of the bond signed by the firm and the intervenor as surety thereon. Facts supplementary to those just stated, material and necessary to the consideration and disposition of the points urged by the several parties hereto will be mentioned as those points are considered.

1. In making proof of the financial transactions had between the bank and the firm prior to Nathan G. Bagley's death, the plaintiff offered the testimony of its president, D. W. Brice, who had represented it in them. To this testimony, the executrix objected on the ground, in effect, that the statute (Wyo. Comp. St. 1920, § 5807; Wyo. Rev. St. 1931, § 89-1704) rendered the same in-

competent as being given by a party to an action where the adverse party was defending as executrix. This objection was by the court overruled and it is claimed that this was error. The argument is that Brice, as an official and stockholder of the bank, who conducted the negotiations with the partners relative to the various loans made, was vitally interested in the result of this litigation and the concluding words of the section last above cited are especially relied upon: "When a case is plainly within the reason and spirit of (the section aforesaid) though not within the strict letter," its principles shall be applied.

The appellants, in support of their position, cite several cases from the state of Minnesota. They are not in point. The statute of that state under which those decisions were rendered differs essentially from ours in its wording. As shown in Caldwell Milling etc. Co. v. May Co., 141 Minn. 255, 169 N. W. 797, it read (G. S. 1913, § 8378):

"It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with * * * a deceased * * * party or person relative to any matter at issue between the parties, unless the testimony of such deceased * * * person concerning such conversation * * * given before his death * * * has been preserved," etc.

The Wyoming law does not have the broad phrase "or any person interested in the event thereof" and its phraseology is in other respects at variance. Our law on this subject was borrowed from the legislation of Ohio. Stephens v. Short, 41 Wyo. 324, 285 P. 797. The exact point here raised has not as yet been determined by this court, but the Supreme Court of Ohio has definitely passed upon it. In Cockley Milling Co. v. Bunn, 75 Oh. St. 270, 79 N. E. 478, 9 Ann. Cas. 179, upon careful consideration, that court held, in an action by the Milling Company

against an administratrix, that the general manager of a corporation, who was also its secretary and treasurer and who had made the contract in litigation with the defendant's decedent, was not as such officer, by the Ohio statute (Rev. Stat. Ohio, § 5242) providing that a party should not testify, where the adverse party is an executor or administrator, excepting to facts that occurred subsequently to the death of the decedent, disqualified to testify to the facts relative to the formation of the oral contract involved. See also the cases cited in extended note in 9 Ann. Cas. 181 concerning the effect given by the courts generally to statutes of this character; 21 A. L. R. 928, and extended note; 54 A. L. R. 264, note, 28 R. C. L. 507, § 94; 40 Cyc. 2290; Parker v. Insurance Co., 23 Oh. App. 535, 156 N. E. 231; Cash, Exr. v. Allen, 56 App. D. C. 327, 13 Fed. (2d) 299, 54 A. L. R. 261; Shawnee State Bank v. Royal Life Insurance Co., 127 Kan. 456, 274 P. 132; Central Maine General Hospital v. Carter, 125 Me. 191, 132 Atl. 417, 44 A. L. R. 1333.

The ruling in Cockley Milling Co. v. Bunn, supra, was followed in the comparatively recent case of Brocalsa Chemical Co. v. Langsenkamp, 32 Fed. (2d) (C. C. A., 6th Cir.) 725, 731, an appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio, where, in review of the decision of the state Supreme Court, this language was used:

"The reasoning clearly covers all the officers and agents of the corporation. It notes that these officers and agents, at least if stockholders, might have been excluded under the common law, because of their interest in the subject-matter, but that the statute has abolished this exclusion and made existence as a party to the record, and not interest, the disqualifying thing. The reasons which make it inadvisable that the corporate agent should testify when the adverse party is dead and cannot, are recognized as forceful; but it is said that for the court to make over the statute to fit the needs or proprieties of the situation

would be judicial legislation. This case has never been overruled or modified. It is later than some lower court decisions indicating the other view, and necessarily overrules them. It has been in effect affirmed and applied in Powell v. Powell, 78 Ohio St. 331, 339, 85 N. E. 541; Loney v. Walkey, 102 Ohio St. 18, 25, 130 N. E. 158."

There was no error in overruling the objection made by the executrix as recited above.

2. The promissory notes sued upon in plaintiff's first and fourth causes of action were respectively, one for $5,000 dated September 24, 1925, due twelve months after date, payable to the order of the bank, and the other similarly payable, for $10,000 dated July 15, 1926, due six months after date, both obligations being signed by N. G. Bagley and J. R. Bagley. The $5,000 note carried endorsements of interest paid: "Nov. 12, 1926—$400, Jany. 4, 1928—$400"; the $10,000 note was endorsed: "Jany. 4, 1928 int. pd. to date 1200; Jany. 4, 1928 pd. on prin. 4300; Jany. 17, 1928 pd. on prin. 1525." This indebtedness was secured, according to the terms of the instruments, by the two chattel mortgages and the two real estate mortgages counted upon, the two former in plaintiff's thirteenth and sixteenth causes of action and the two latter in plaintiff's fourteenth and fifteenth causes of action, as heretofore described. These chattel mortgages included, among other enumerated personal property, some 460 head of cattle. Some time in December, 1927, these cattle were sold by John R. Bagley with the consent of the bank, the proceeds of the sale were deposited in the bank to the credit of Bagley Brothers and then checked out by John R. Bagley. Some of these funds were used to pay off other notes given to the bank for previous loans and the balance was endorsed on the $10,000 note aforesaid, the application of these funds being agreed upon both by the bank and by John R. Bagley. The president of the bank, D. W. Brice, testified also, on cross-examination, that had the cattle

money been applied exclusively to the liquidation of the $5,000 and $10,000 notes, it would have been sufficient to have paid them.

The trial court, in effect, found concerning this matter that the proceeds of this cattle sale were applied with plaintiff's consent by John R. Bagley as surviving partner upon other indebtedness of the firm to the plaintiff and that the two notes last above mentioned were not thereby paid. This finding is asserted by appellants to be error.

It is said first that because plaintiff pleaded these two notes and alleged that a certain amount was due and unpaid on each, the burden of proving such nonpayment rested throughout the trial upon the plaintiff notwithstanding the plea of payment interposed by the executrix in her answer and that this burden was not sustained. However, there was affirmative testimony in the record offered by plaintiff sufficient to establish a *prima facie* case on that issue. Further, while, in order to make a good pleading on a note or other obligation to pay money, it is necessary to allege that the money has not been paid yet, as indicated in 21 R. C. L. 119, § 131,

"it is a *non sequitur* to say that because such negative averment is necessary in the complaint therefore it is necessary for the plaintiff to prove it. The general rule is that a party is not called upon to prove his negative averments, although they may be necessary to his pleading. The plea of payment tenders an affirmative issue, and the burden of proof must be assumed by the party interposing the plea. * * * In an action on a promissory note the plaintiff establishes a *prima facie* case by proving the note, and it is necessary, therefore, to justify a verdict in favor of the defendant upon the plea of payment, that he produce evidence sufficient to overcome the *prima facie* evidence in favor of the plaintiff arising from the note's being in his possession, and also to outweigh any other evidence in the case tending to show that the note was unpaid."

See also 48 C. J. 682 and cited cases; 8 C. J. 1011.

It appears in the record that some time prior to the sale of the cattle—just when is not clear—the executrix made application for an injunction in the District Court of Platte County to restrain the bank and John R. Bagley from selling these cattle and a paragraph of the bank's answer thereto was read in evidence, wherein it was stated in substance that Bagley Brothers had failed to pay the indebtedness due the bank and hence the latter elected to declare the mortgage in default and to take possession of the property covered by it and to foreclose and sell the same, including the cattle in question. The claim is here made that the bank is now estopped to show that it did not take possession of the property and foreclose the mortgage with the consequent duty of applying the proceeds only to the mortgage debt and may not show, as it was permitted to do by the trial court's ruling, that John R. Bagley voluntarily sold the cattle with its consent, applying the proceeds in the manner hereinbefore mentioned. It would seem that a sufficient answer to this contention is that neither all the issues nor the order finally disposing of the injunction suit were put in evidence in the record at bar. For aught that appears here, the injunction proceedings may have been withdrawn or abandoned subsequently by both parties.

Our attention is directed also, to the fact that these two notes were listed in one of the bank's books where notes that were paid or partially paid were customarily carried, but the president of the bank testified that, so far as these obligations were concerned, this meant simply that they had been charged off by the bank as past due paper. The trial court was within its rights in taking this testimony at its face value and in making its finding accordingly.

The additional argument is advanced that John R. Bagley, as surviving partner and trustee for the representative and heirs of the deceased partner, was bound to apply the proceeds of the sale of the cattle to the payment of

these two notes and the bank, knowing of the trust, was likewise obligated. But the trial court found upon the evidence submitted that these proceeds were duly applied to firm indebtedness and, so far as appellants are concerned, it is difficult to see how they can complain of such application. The executrix had a right only to insist that these proceeds, as firm property, should be applied to firm debts—and whether they were secured or unsecured, in this case, could make no difference to her. Doubtless, if the funds were employed by the surviving partner in payment of other than firm indebtedness, it may well be that he could be held liable on his bond as such at the suit of the parties injured. Cases are cited by appellants to the effect that a payment of the proceeds of mortgaged property must be applied on the secured debt unless the debtor assents to another disposition. And this, of course, is ordinarily true. However, in Cain v. Voight, 138 Ia. 631, 116 N. W. 786, 128 Am. St. Rep. 216, it was ruled that where, in addition to the mortgage debt, the mortgagee was the holder of unsecured notes and payments were made without any instructions as to their application, he might apply such payments to the unsecured notes, even though the money was the proceeds of a voluntary sale by the mortgagor of part of the security. See also 5 R. C. L. 457, § 92. In the instant case, the proof is that the bank and the surviving partner both agreed upon the disposition that should be made of the proceeds arising from the sale of the mortgaged cattle.

Concerning the powers of a surviving partner under statutory provisions (Gen. Stats. Kan. 1909, § 3466 et seq.) somewhat similar to those contained in our law (Wyo. Rev. St. 1931, §§ 88-2505, 88-2506; Wyo. Comp. St. 1920, §§ 6838, 6839) under which John R. Bagley was acting, in Big Four Implement Co. v. Keyser, 99 Kan. 8, 161 P. 592, 593, L. R. A. 1917C 166, a case cited by appellants, this language was used:

"The settlement of the partnership estate devolves primarily on the surviving partner where he elects to undertake it, and, if he does not, then upon the administratrix of the estate. Gen. Stat. 1909, § 3467. It was the duty of the surviving partner, who assumed the task in this case, to wind up the business within a reasonable time and in the way most advantageous to those interested in the estate, and, after paying the debts and the expenses of winding up the business, to distribute the assets among the surviving partners and the representative of the deceased partner. The surviving partner is vested with some discretion as to the manner of closing the business and the time to be taken for that purpose. He may continue the business long enough to close it up without sacrificing the assets and long enough to make an advantageous disposition of the stock."

With the text of a law as to the powers of surviving partners practically identical with our Section 88-2505, supra, indeed, the opinion states that the statute was doubtless borrowed from the legislation of California, as was ours,—the Supreme Court of Utah, in the case of In re Auerbach's Estate, 23 Utah 529, 65 P. 487, 488, 490, says:

"This statute is simply declaratory of the common law, and does not change the common-law doctrine that a surviving partner is entitled to the possession and management of the joint property for the purpose of winding up the affairs and business of the partnership and the payment of its debts. For such purposes the legal title to all the joint personal property, upon the dissolution of the partnership by the death of one or more of the partners, becomes immediately vested in the survivor, as trustee, and it is thereupon his duty to dispose of it in good faith for the best interests of the decedent's estate and all concerned."

Quoting from Parsons on Partnership, Sections 440, 442, as stating correctly in summary the rights and powers of surviving partners, in Davis v. Sowell & Co., 77 Ala. 262, we find it said:

"The death of a partner invests the surviving partners with the exclusive right of possession and management of the whole partnership property and business; but only for the purpose of selling and closing the same. * * * The survivors have possession, and keep possession of every thing. Until a settlement, the representatives of the deceased can not claim or take any one chattel, or any portion of the merchandise. The survivors are, from the death, trustees for all concerned in the partnership; for the representatives of the deceased, for the creditors of the firm, and for themselves. Their trust is to wind up the concern in the best manner for all interested, and, therefore, without unnecessary delay; and their powers are such as enable them most effectually to execute that trust."

Similarly, in Riddle v. Whitehill, 135 U. S. 621, 10 S. Ct. 924, 929, 34 L. Ed. 282, Mr. Chief Justice Fuller, in discussing the same subject, said:

"But in case of dissolution by death, surviving partners are invested with the exclusive right of possession and management of the whole partnership property and business, for the purpose of paying the partnership debts and disposing of the effects of the concern for the benefit of themselves and the estate of the deceased."

So in Tompkins v. Weeks, 26 Cal. 51, the court, speaking through Judge Sawyer, remarked:

"The partnership property was assets of the firm, and subject to the exclusive management and control of the surviving partner. It was not assets of the estate in the hands of the administrator. Only the share of the deceased in the residuum of the partnership assets, after the affairs of the partnership should be wound up and the debts paid, would be assets of the estate in the hands of the administrator.

"The administrator had no authority to intermeddle at all with the partnership affairs, except so far as he was entitled to call upon the surviving partner to proceed and close up the partnership affairs and account to him for the share of the surplus belonging to the estate."

Referring to the very section of the California code mentioned by the opinion in the Auerbach case, the California District Court of Appeal, in Kimball v. Baxter, 228 P. 381, 67 Cal. App. 635, employed the following language:

"A surviving partner is entitled to possession of the partnership assets and to settle its affairs, unconfused by any control by the representatives of a deceased partner. Code Civ. Proc. § 1585; Theller v. Such, 57 Cal. 447; Cooley v. Miller & Lux, 168 Cal. 120, 142 Pac. 83; Minifie v. Rowley, 187 Cal. 481, 202 Pac. 673."

Finally, this court, in Thomas v. Mann, 22 Wyo. 99, 135 P. 1088, 1089, after mentioning the statute—Wyo. Comp. St. 1910, § 5565, said:

"On the death of Roman, Thomas, the surviving partner, became entitled to the exclusive right of possession and management of the partnership property."

We see no reason to doubt that, under the law as interpreted by the decisions to which reference has above been made, John R. Bagley, as surviving partner, had the power and the right to consent to the application of part of the proceeds of the sale of the cattle to other firm indebtedness than the two notes aforesaid, and that the trial court was not mistaken in finding that said notes had not been paid.

3. Appellants contend that the trial court erred in ordering the foreclosure of the chattel mortgage counted upon in plaintiff's seventeenth cause of action. This contention is based upon the language used in the instrument to designate the indebtedness secured thereby: "Up to twenty thousand dollars * * * according to the conditions of any notes signed by Bagley Bros. by John Bagley bearing date Aug. 5th, 1927 and Dec. 31st, 1927 or any notes already signed and past due and given

by the said party of the first part (Bagley Bros. by John Bagley) to the said party of the second part (The State Bank of Wheatland).'' It is said that the two notes thus mentioned as dated in December, 1927 were nonexistent and this fact is admitted by the plaintiff. It is pointed out also, that the note dated August 5, 1927 is not in the record. The claim is therefore made that the notes representing the indebtedness are not sufficiently described and the instrument is ineffective for any purpose. But the instrument bears the year date 1927 and appears to have been acknowledged some time in August, 1927, the exact date not being given. The record shows that the notes sued on in the third, fifth and seventh causes of action were all dated in 1926, were past due by the time the year 1927 arrived, and were all signed ''Bagley Bros., J. R. Bagley.'' Hence, the District Court properly foreclosed the mortgage and directed the application of the proceeds from the sale of the property upon the amounts found to be due on these notes. The trial court mistakenly directed the application of these proceeds to the liquidation of a note which was signed ''Bagley Bros. by N. G. Bagley,'' an obligation not within the terms of the chattel mortgage aforesaid or the seventeenth cause of action as pleaded by plaintiff. The decree should be corrected in this particular. Our attention is called to the fact that five wagons described in the mortgage are recited therein as located in Platte County and not in Weston County where the instrument was filed. However, the record shows proof that all of the property included in the mortgage was, as a matter of fact, in Weston County at the time of the execution, delivery and filing of the instrument in that county. Jones's Chattel Mortgages, (5th Ed.) § 251a; Porter v. Stuart, 203 Mass. 46, 89 N. E. 118.

In this connection, it may be observed that the validity of a mortgage depends upon the genuine character of the debt which the mortgage is to secure and not upon the

description of the debt contained in the mortgage other than as required by law (Wyo. Rev. St. 1931, § 71-103; Wyo. Comp. St. 1920, § 4683) nor upon the form of the instrument given to represent the debt which may be by note or contract. In Wood v. Weimar, 104 U. S. 786, 26 L. Ed. 779, it was held that a mortgage made to secure a debt of specified amount was valid, it having been made in good faith, though the debt was in fact represented by seven notes, none of which were described. In the course of its discussion of the point, the court said:

"It was material for creditors to know the amount of the indebtedness secured, and the property covered. These are truly stated. To enforce his mortgage, the mortgagee must prove his debt, and he can only recover to the extent of what he proves. If the items which make up the debt are particularly described in the mortgage, it may save trouble in establishing the facts; but if there has been no fraud, and subsequent creditors have not been injured by the omission of specifications, identity may be established by parol. In making the proof, the debt must come fairly within the general description which has been given; but if it does, and the identity is satisfactorily made out, the mortgage will be sustained where good faith exists."

4. The District Court found that certain amounts were due the plaintiff on the seven promissory notes sued upon by the bank in the fifth, seventh, eighth, ninth, tenth, eleventh and twelfth causes of action and directed that the proceeds arising from the foreclosure and sale of the property described in the chattel mortgage counted upon in the plaintiff's seventeenth cause of action, that covered by the real estate mortgage as reformed and pleaded in plaintiff's fifteenth cause of action, and that embraced in the pledge of the several shares of stock in the Service Filling Station Company, the basis of plaintiff's nineteenth cause of action, should be applied to their liquidation. A finding was also made that John Bagley as sur-

7

viving partner, after his brother's death, was obligated to complete the road construction contracts and to wind up the firm affairs and that "in order to finance said operations, it became and was necessary for him to borrow from plaintiff the sums of money evidenced by the notes set forth in plaintiff's fifth, seventh, eighth, ninth, tenth, eleventh and twelfth causes of action." It is asserted that these findings are erroneous.

These seven notes were all signed "Bagley Bros., J. R. Bagley" and were all given to plaintiff after the death of Nathan G. Bagley. The money thus borrowed was deposited by John Bagley as surviving partner in the plaintiff bank in an account which stood in the name of "Bagley Bros." John Bagley testified that, at the time his brother died, there was not enough money in Bagley Brothers' account to carry on the highway construction contracts of the firm and it was consequently necessary to borrow funds from the bank and that the money obtained from these loans was used in an endeavor to finish the two uncompleted highway contracts with the State of Wyoming, which have hereinabove been mentioned, for managing the ranch property and, as the witness said, "just used it for everything as I had before, all I had to use."

In this connection, it is proper to refer briefly to the somewhat unusual manner in which the firm business was conducted as regards this account. It appears by the record that Nathan G. Bagley and John R. Bagley were brothers who had married sisters; that all income received by these two men in consequence of the firm business or from any other source, such as money borrowed after Nathan's death on the life insurance of John R. Bagley or dividends on the Service Filling Station Company stock certificates standing in their several names, was all deposited in this account. From it were customarily paid, not only all business expense connected with the firm, but

also all personal expenses of the partners and their families of every kind—for groceries, automobiles, lodge dues, life insurance premiums, education of the children, doctors' bills, hospital bills, etc. It also appears that Mamie E. Bagley, Nathan's wife, herself at times drew checks upon this account. No formal division of the profits of the partnership appears to have ever been made, the partners contenting themselves with these withdrawals from the firm account for their personal needs and the needs of their families.

The argument is advanced by appellants that, as a surviving partner has power only to complete unfulfilled existing firm contracts, to wind up firm affairs by paying its debts and then distributing the remaining assets to those properly entitled thereto and that, as the evidence here does not disclose what portion of the borrowed money represented by the seven notes aforesaid and deposited in said account was used by John R. Bagley as surviving partner and what was used improperly by him, i. e., for personal expenses, and the bank, through its president, being conversant with the uses to which John R. Bagley put the borrowed money, the familiar rule applied by the courts in the case of improper mingling of goods which cannot be distinguished, must control. Hence, it is said these notes are all invalid in the hands of the bank.

This contention is grounded on the testimony of D. W. Brice, the president of the bank, given on cross-examination, as follows: That he knew of no other account which John Bagley possessed after Nathan Bagley's death than the one in The Wheatland State Bank standing in the name "Bagley Bros."; that so far as Brice knew, John Bagley had no other means or assets than as indicated by that account and whatever his expenditures were, they came out of the Bagley Bros. account; that there was no change in the manner of carrying on the firm account, the business and its affairs with the bank after Nathan's

death; that when money came in for the cattle, it was deposited to Bagley Brothers' credit and then John would check it out according to his needs in carrying on his business; that the account was so carried in order to help out on the highway contract work; that all checks that came into the bank up to the time the latter discontinued furnishing credit to John R. Bagley as surviving partner were paid without question as, said the official, "we knew they were for highway work."

We are not inclined to think that this testimony, when considered with the other evidence in the case, is sufficient to authorize this court to lay aside the finding of the District Court, in substance, that these notes were valid because given by the surviving partner for money borrowed expressly to complete the highway construction contracts of the firm and to wind up its affairs— things the law unquestionably authorized and required the surviving partner to do. Both he and the bank must be held to have known the authority fixed by law in the surviving partner and, in the absence of proof to the contrary, the bank would have the right to presume that when the borrowed money was deposited in the Bagley Bros. account, it would be properly used by John R. Bagley. It was not its duty to watch and supervise his checks.

The fact—if it is a fact, although it appears only by inference—that the bank may have learned that John R. Bagley used some of these borrowed funds to pay personal expenses, would not be sufficient, as we view the matter, to invalidate the loans made. It does not appear that at the time the money was borrowed, the bank knew the funds thus loaned were to be improperly used by the borrower, the law being that a lender's rights are not affected by the borrowing partner's misapplication of the money, if the former has acted in good faith, he not being bound to see to it that the money loaned was actually used for partnership purposes. 47 C. J. 865 and cases

284

cited. Cresco Union Savings Bank v. Terry and Terry, 202 Ia. 778, 211 N. W. 228; Smith v. Overton, 295 S. W. (Tex. Civ. App.) 702. Indeed, it is not clear, even at this time, from this record, that the borrowed money was misapplied by John R. Bagley, it not appearing that any accounting has as yet been had between the surviving partner and the personal representative of the deceased partner.

The record establishes that John R. Bagley deposited the proceeds of a loan obtained upon his own life insurance policy and, it may be, other personal funds in the account of Bagley Bros. after Nathan's death and no effort was made to show that more than this fund was needed for the payment of his personal obligations. It must not be overlooked either, that the rule that a person who mingles his goods with those of another so that they are indistinguishable forfeits his own goods, is not applicable when the act was not done wilfully with a fraudulent or improper intent or purpose and the burden of proof to establish the character of the act is upon him who asserts it. 12 C. J. 492, § 4, and cases cited; 12 C. J. 498, § 16. This record discloses no such improper intent. If the proofs in this case should be interpreted as broadly as appellants seem to claim, i. e., that the surviving partner used the borrowed funds exactly as had been done previous to Nathan G. Bagley's death and the bank was cognizant of the fact—this would apparently indicate that the money was used for the personal expenses, not only of John Bagley and his family, but of the executrix and her son as well. If that were true, she could hardly question the validity of the loans, having participated in their application in directions not contemplated by the law governing the closing up of partnership affairs.

Something is said concerning the effect of an order signed by the District Court commissioner of Platte County on August 5, 1927 and apparently procured by

John R. Bagley as surviving partner which purports to limit his authority as such partner to borrow money to the sum of $23,000. We fail to see its pertinency on the questions herein involved. It was signed after every loan drawn in question in this record had been made. Apparently, it was never submitted to the District Court for its approval or disapproval (Wyo. Rev. St. 1931, § 31-219; Wyo. Comp. St. 1920, § 1151).

The District Court was not in error in upholding the validity of the seven promissory notes aforesaid.

5.   The finding in the decree that the twenty-two shares of stock of the Service Filling Station Company, the title to which was taken in the names of Nathan G. Bagley and John R. Bagley, individually, was partnership property, having been purchased with firm funds, and the judgment in said decree set forth that this stock be sold as pledged collateral and the proceeds applied to the specified debts evidenced by the notes given by John R. Bagley to the plaintiff after Nathan G. Bagley's death, is attacked. There is ample evidence to support this finding as we read the record. D. W. Brice testified that these certificates of stock were delivered to the bank shortly after Nathan's death as collateral for money furnished and to be furnished "on the project on which the Bagley Brothers contract was not fulfilled," i. e., the Newcastle-Lead State Highway contract. Other witnesses testified that the stock was purchased with firm funds and that the dividends from said stock were regarded and treated as income of the firm. Inasmuch as the law is that "unless the contrary intention appears, property acquired with partnership funds is partnership property," (Wyo. Rev. St. 1931, § 81-203; Wyo. Comp. St. 1920, § 4179) the fact that the stock was taken in the individual names of the partners — as the argument put forward is — is not in itself sufficient to show a "contrary intention" so clearly as to permit this court to regard the finding of the trial

court as unsupported. 47 C. J. 753, § 182, and cases cited; 47 C. J. 752, § 178. The authority of a surviving partner to borrow money in order to complete unfinished contracts and to wind up firm affairs has already been discussed. Undoubtedly, he has the power to pledge firm personalty to secure debts thus incurred. See 47 C. J. 1047, § 617, and cases cited; 20 R. C. L. 997, § 234.

6. It is insisted by appellants that error was committed by the District Court in finding and adjudging that the real estate mortgage dated September 24, 1925 and counted upon in plaintiff's fourteenth cause of action should be foreclosed. This position is taken, first because it is said that this mortgage and the subsequent real estate mortgage of date July 15, 1926 and pleaded in plaintiff's fifteenth cause of action represent the same obligation and to foreclose both would be productive of needless expense. A sufficient answer to this contention, however, appears in the fact that these mortgages do not cover identical property. It is true, nevertheless, that with the exception of lots 8, 9 and 10 in block 122 in the town of Wheatland, Wyoming—generally referred to herein as the "town property"—the mortgage obligations, both as to indebtedness secured and property affected, are the same. This leads us to a consideration of the second claim of appellants on this point, which is that this town property was and is the homestead property of Nathan and Mamie Bagley, his wife, and hence, the mortgage thereof executed only by J. R. Bagley and N. G. Bagley without the joinder therein of Mamie E. Bagley, is invalid.

It is unnecessary to cite authority concerning the effect upon an instrument purporting to mortgage homestead property in this state without the wife's signature and assent to a waiver of the homestead right. It will be sufficient simply to refer to the statute (Wyo. Rev. St. 1931, § 97-205; Wyo. Comp. St. 1920, § 4619) which in plain terms declares such instrument to be "absolutely void." The question to

be resolved then is—was this property the homestead of Nathan and Mamie E. Bagley at the time the mortgage was executed? If it was, then the mortgage, so far as the homestead property is concerned, was "absolutely void." Jones v. Losekamp, 19 Wyo. 83, 114 Pac. 673, 675. The trial court found that this town property was "paid for with partnership funds, was used for partnership purposes and was and is the property of Bagley Brothers, a co-partnership." It is urged that this finding that the property belongs to the firm is unsupported by the evidence and with that conclusion, we are compelled to agree.

The record establishes in substance that this property was purchased in July, 1921, by two checks signed "Bagley Bros." one of which is OK'd by N. G. Bagley under the firm signature and the other apparently in his handwriting, in order to obtain better school facilities for his child and because his wife's health was not good at the ranch where they were then living; that title thereto was taken, not in the name of the firm, but in the name of Nathan G. Bagley; that prior to the time of this purchase, Nathan G. Bagley, his wife and child lived on the ranch property obtained from the Federal Government under the National Homestead laws; that in August, 1921, the family moved in from the ranch to this town property and lived there, as their home, until the fall of 1924 when the boy went away to school in Colorado Springs, Colorado, to continue his education; that during the next three years, the wife spent considerable time with her son while he was thus absent in school, but, as she testified referring to this property, "I was in and out of here * * * it is my home"; that the house furniture of the family was never moved from this property; that the claim of the property being her home was made by Mamie E. Bagley in the presence of John Bagley, who never objected or made any contrary assertion or claim; and that, at the time of the trial of this case, she was living on the premises in question. The record also dis-

closes that sometime in the year 1924, Nathan G. Bagley and his wife had some sort of marital disagreement and, through court proceedings, she sought separate maintenance, but it further appears that sometime before Nathan's death, these difficulties were all adjusted and a reconciliation had; that even during the time these proceedings were pending, the parties lived together as husband and wife, both in the home in Wheatland and in Colorado Springs; and that John Bagley and his family also stayed in the house a considerable part of the time when Mamie E. Bagley was away from home and sometimes they stayed there while she did.

In considering this matter, it must never be forgotten as said by this court in Jones v. Kepford, 17 Wyo. 468, 100 Pac. 923, that the loss or relinquishment of a homestead exemption is not favored by the law. It is certain that the first home of the Nathan G. Bagley family was on the Government homestead property used as a ranch. That home was relinquished and the town property acquired for the purposes shown by the record as above recited. Mrs. Nathan G. Bagley, herself, testified that if she had not expected to establish her home in the town property, she would not have given up the ranch home.

For the plaintiff, it is argued that this town property was purchased with firm funds, that under the law already mentioned (Wyo. Rev. St. 1931, § 81-203; Wyo. Comp. St. 1920, § 4179), this fact transforms it into firm property—unless a contrary intention appears,—and further, that a homestead exemption cannot be obtained in firm property.

But is it not true that a homestead right can be acquired upon an undivided interest in land? As said by the Supreme Court of Montana in Wall v. Duggan, 76 Mont. 239, 245 Pac. 953, 954:

"That question was answered in the affirmative by this court in Lindley v. Davis, 7 Mont. 206, 14 Pac. 717, and in principle the doctrine of that case was approved in Ferguson v. Speith, 13 Mont. 487, 34 Pac. 1020, 40 Am. St. Rep.

459, and was recognized in McCarthy v. Kelley, 63 Mont. 233, 206 Pac. 782. No useful purpose could be served at this late day in reiterating the arguments in favor of the rule announced in Lindley v. Davis. That rule is supported by right reasoning and by the overwhelming weight of authority, and is now reaffirmed.''

In the case of Ferguson v. Speith cited in the quotation last made, the facts were briefly, that Speith and Krug were partners in the brewing business in Bozeman, Montana; that in April, 1873, the property in dispute was purchased with firm funds; that in May of that year, Speith, with his family, took possession of the premises and occupied them as a home and did so at the time of the trial of the case; that Krug, the other partner, also occupied a room in the same house and the employes of the firm boarded there at the firm expense. Krug died and the assets of the firm were attached, including the premises aforesaid, as the title thereto stood in the name of the firm. The property was sold to plaintiff. During these adversary proceedings, Speith continuously insisted that the property was subject to his homestead right. The action was one in ejectment by the purchaser under the attachment proceedings to oust Speith, the defendant. The judgment was in the latter's favor and this result was affirmed on appeal, the court holding that a partner was entitled, as against creditors of the firm, to a homestead in partnership property.

In Waples on Homestead and Exemption 908, we find this language used:

''It has been said, even judicially decided, that if the partners consent that one of their members may claim exemption in the partnership assets, he may legally have it accorded to him, though there be outstanding debts. The creditors are declared to be without right to complain, since their attitude is like that which creditors hold towards an individual debtor. To quote from an opinion so declaring: 'The separate partners have a right, in order to their own exoneration, to have the joint property applied to the joint debts, and in its exercise the joint creditors reap the bene-

fits; but no such equity resides in the creditors, as such, to have their demands first satisfied. When the partner refuses to avail himself of this equitable right, and consents to an appropriation of the common property to the personal and separate use of one of them, the result is the same as if there were no joint liabilities, and each had a perfect right to his own share.

" 'Putting the partnership creditors out of the way, there can be no legal obstacle to what is in effect an actual partition between them of so much as each receives as his exemption. Why should it not be so? The joint creditors have no more rights to shift the burden from the joint, and put it upon the separate, property, to the injury of the individual creditor, than he has to do the reverse and put the burden upon the joint property, to the injury of the former. Upon principle, then, we uphold and abide by the ruling heretofore made, as resting upon sound reason.' Scott v. Kenan, 94 N. C. 296.''

So in 29 C. J. 850, § 171, it is declared that where the rule prevails that homestead rights may be acquired in property held by tenants in common, a homestead right can be claimed in partnership property if the partners consent thereto.

In the case at bar, it is clear that both partners acquiesced in this town property being taken by the Nathan G. Bagley family as a home immediately upon its purchase in 1921. Under the prevailing rule as mentioned above and our state law creating the homestead right (Wyo. Rev. St. 1931, § 89-2984 et seq.; Wyo. Comp. St. 1920, § 6028 et seq.), the homestead exemption became fixed upon this property so as to prevent its encumbrance without the wife's consent. We are the more ready to accept this view in that the indebtedness undertaken to be secured by the mortgage attempted to be given upon this property arose years after the homestead right had accrued and when all parties dealing with the firm were chargeable with knowledge that this family had occupied this property from the time of its purchase as and for a home.

We see nothing in the record to indicate, even with reasonable clearness, that the wife intended to give up her homestead rights in the town property. In Jones v. Kepford, supra, this court, elaborating the rule that there must be proof of a clear and unequivocal intention to relinquish a homestead right, once acquired, used the following language:

"A constant and abiding intent to return coupled with a temporary absence is inconsistent with an abandonment of a homestead, (21 Cyc. 602) and if there was a present intent to return at the time of the removal then the fact of removal did not constitute an abandonment or forfeiture of the homestead right. (Duffy v. Willis, 99 Mo. 132, 125 S. W. 520.) A prolonged absence from a homestead does not of itself raise a conclusive presumption that the right of homestead has been abandoned, (21 Cyc. 605 and note); and it has been held not to be an abandonment when the former residence tract was used in connection with a neighboring one to which the family of the homesteader removed, (21 Cyc. 604; Waples on Homestead & Exemptions, pp. 558 & 559; Summers v. Sprigg, 35 S. W. 1033; 18 Ky. L. Rep. 206; Chase v. Barnard, 64 N. H. 615, 17 Atl. 410; Nichols v. Nichols, 62 N. H. 621); nor is it an abandonment when the owner moved from a town house to a country residence, leaving part of his personal effects in the former and intending to return."

And 29 C. J. 941, § 358, says:

"If the debtor removes from the home property for the purpose of obtaining better educational facilities for his children, his absence is not regarded as an abandonment, if the removal is not intended to be permanent."

Mamie E. Bagley evidently was absent from the Wheatland town property, not with the idea of giving up her home there, but of returning to it. Indeed, when this case was tried, she appears to have been living there and she unquestionably repeatedly returned to the home while her son was out of the state completing his education. Her

furniture was never removed from the house. Somewhat is said about this furniture having been bought with firm funds, but we think that the money so used was withdrawn from the mass of firm property with the consent of both partners and, like the wearing apparel of Mrs. Nathan G. Bagley, similarly purchased and indeed, like the homestead right in question, became the individual property of the family members.

Referring to the statute (Wyo. Rev. St. 1931, § 81-203), it seems to us that the record shows very clearly a "contrary intention" on the part of the partners to regard the town property as owned by the firm. Title to the property was taken in the name of Nathan G. Bagley as an individual and has ever since so remained; it was thus carried on the tax rolls of the county until it was assessed to Mamie E. Bagley after her husband's death; it was used at the first for a number of years continuously, as the Nathan G. Bagley family home; the members of that family continued to return to it when education and health conditions altered the family's method of living; and the property seems to have been deliberately omitted from the mortgage dated July 15, 1926, although the president of the bank who typed that instrument testified that it was the intention to include all property of the firm and that he had the mortgage of September 24, 1925 before him when he drew the later instrument.

The argument is made that no issue was made in the pleadings concerning this claim of homestead right, but it was undoubtedly litigated as the court's finding shows. Besides, evidence of the homestead right is admissible under the general denial in an action to subject homestead property to an asserted creditor's lien. 29 C. J. 880, § 245.

It was accordingly error for the court to direct the foreclosure of the mortgage dated September 24, 1925 and to allow an attorney's fee in that connection. This is said with the rule announced in Jones v. Losekamp, supra, fully in mind. With the town property out of that mortgage, the

subsequent encumbrance dated July 15, 1926 covered the same property as the earlier one, as will be remembered. To foreclose both would cause needless expense.

7. John Bagley, the surviving partner, was called as a witness for the plaintiff for cross-examination, under the statute (Wyo. Rev. St. 1931, § 89-1705) and this was allowed by the court, upon the theory, evidently, that he was actually an adverse party, for that is the test of the right to cross-examine a party under the section cited. See Lally v. Cash, 18 Ariz. 574, 164 Pac. 443. This ruling is assigned as error. We do not think John R. Bagley was in fact an adverse party to the plaintiff in this case. He was in default for answer for some time and thereafter when he did file a pleading, it was to admit all the claims made by the plaintiff. Undoubtedly, his interest really lay with the plaintiff's side of the issues as made up and against that of the other defendants. As the latter, however, apparently made no effort to cross-examine him and were not denied that right, it is not altogether clear, as we read the record of his testimony, that this error was of a serious character. See Jasper v. Bickell, 68 Colo. 308, 191 Pac. 115; Moore v. May, 117 Wis. 192, 94 N. W. 45; Guse v. Power etc. Co., 151 Wis. 400, 139 N. W. 195.

Still the additional point is made that John R. Bagley was erroneously permitted to testify over her objection and exception, against the executrix, concerning transactions between himself and his deceased partner, Nathan G. Bagley, and that this was done in disregard of the provisions of Section 89-1704 of Wyo. Rev. St. 1931 (Wyo. Comp. St., § 5807) which reads in part:

"A party shall not testify where the adverse party is * * * an executor or administrator, or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person, except:
"1. To facts which occurred * * * subsequent to the time the decedent, grantor, assignor or testator died."

The view generally taken by the courts relative to statutes of this character concerning their operation is very well set forth in the following language excerpted from the opinion in Walworth County State Bank v. Taylor, 55 S. D. 24, 224 N. W. 929, 932:

"Although the witness Myers was named as a defendant in this case and called for examination by respondent under the statute (Rev. Code, § 2714) pertaining to cross-examination of adverse parties, it is not contended that this statute makes competent against his codefendant heirs and administrator the particular proof adduced from this witness, and the question here rests entirely on the provisions of Section 2717 above quoted. In the application of statutes of this character it is a well-recognized rule that the real interest of the parties rather than their position on the record controls, and therefore parties whose interests are the same are not competent for each other merely because they are opposite by the circumstance of their joinder as parties. Whether parties are opposite within the meaning of Section 2717, supra, depends upon the relation they sustain to the particular issue in controversy. Dolan v. Dolan, 89 Ala. 256, 7 So. 425, 426; Martin v. Asher, 25 Ind. 237, 240; McCartin v. Traphagen, 43 N. J. Eq. 323, 11 A. 156, 159; Weinstein v. Patrick, 75 N. C. 344, 346; Eslava v. Mazange, 8 Fed. Cas. 780, 781, No. 4527.

" 'Courts of equity will disregard mere matters of form, and will look to the substance, and see on which side of the controversy the real interest of a party to the suit who is interested therein lies, and determine the competency of the witness from his interest in the case, regardless of the mere question of pleadings, when the question is as to his interest in the case. Were the rule otherwise, the effect and force of the statute could be evaded.' Bardell v. Brady, 172 Ill. 420, 424, 50 N. E. 124, 125."

To the same effect, see Kirkpatrick v. Kirkpatrick, 151 Atl. 48, 106 N. J. Eq. 391, 151 A. 48; American Inv. Co. v. Coulter, 8 Kan. App. 841, 61 Pac. 820; 40 Cyc. 2272-2273.

We think it obvious, as already indicated, that John Bagley was an adverse party to the executrix in this litigation. It is said for the plaintiff that, both as executrix and as an

individual, Mamie E. Bagley was only a nominal party and that she may not raise the objection of John R. Bagley's competency to testify to transactions with his deceased brother. But we are unable to see that this is so, the surviving partner having fully acquiesced in plaintiff's demands for the subjection of the property herein involved to the satisfaction of its asserted liens. The District Court expressly authorized the executrix to ''make or allege whatever defenses she may conceive that said partnership might have to plaintiff's cause of action.'' She sought to show, if she could, that the property claimed was not subject to said liens so far as certain lands, the title to which stood in the name of her deceased husband, were concerned. By this means she sought to obtain assets for distribution in his estate; she was individually definitely interested, too, as devisee under his will. We see no reason why she should be denied the right to litigate her claims to the fullest extent and to make any objections to adverse testimony which the law of evidence permitted her to do.

It is also insisted that no preliminary examination was made of John R. Bagley to show that he was an adverse party. None was needed. The record in the case as already made by the pleadings established that fact. It is perfectly apparent from the authorities cited above that because the surviving partner was made a codefendant with the executrix, such fact could not and did not control the question whether he was an adverse party. The contention is made also, that the objections presented by the appellants to the trial court were all joint in character, although the words ''each'' and ''several'' were used in making them, and that these must be good as to all or else overruled. We cannot acquiesce in this contention for we think the record shows clearly the presentation to the court of several and not joint objections on behalf of the appellants and that the court so understood the matter. It was specifically agreed to, in order to save time and interruption of the course of

the trial, that the objection to the testimony of John R. Bagley "as affecting the title of either of us (Mamie E. Bagley as executrix, Mamie E. Bagley individually, and the firm) to this land or any part of it" relative "to any personal transaction or conversation with the decedent, Nathan G. Bagley" need not be repeatedly made—the trial judge saying at the time, "It is my understanding that you offered that objection at the beginning of the testimony of this witness and that it, of course, covered the entire testimony."

Our attention is directed to the rule mentioned and applied by this court in Williams v. Yocum, 37 Wyo. 432, 263 Pac. 607, that where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, admission of incompetent evidence is not ordinarily a ground for reversal, and ordinarily that is properly so. But like a great many rules, this one is not invariably applicable. Brown v. Fore, 118 Tex. 667, 12 S. W. (2d) 114, 63 A. L. R. 435, was an action by the alleged donee to enforce certain notes and, in order to establish his title against the payee's executors who set up a claim to them, the maker of the notes was permitted to testify as to statements of the deceased payee as to a gift by him of the notes. It was objected that this testimony should not have been admitted under the statute providing that, in actions by or against executors, neither party should be allowed to testify against the other as to any statement by the testator unless called to testify by the opposite party. Holding its admission to have been reversible error, the court said:

"Counsel for Mrs. Fore insist that since the case was not tried to a jury, and the fact issue of a gift to Mrs. Fore is raised by testimony other than that of Husbands, the presumption should be indulged that the incompetent testimony of Husbands was disregarded by the trial court in rendering judgment for Mrs. Fore. Ordinarily, such a presumption will be indulged in favor of a judgment rendered by a trial court without the aid of a jury. But the presumption loses its force when it reasonably appears from

an inspection of the record that the incompetent testimony influenced in some degree the action of the trial court in rendering the judgment it did. Moore v. Kennedy, 81 Tex. 147, 16 S. W. 740. It is believed that the circumstances attending the introduction of the testimony of Husbands, and the motion of the plaintiffs in error to strike it out, are such as to leave little room to doubt that such incompetent testimony was regarded by the trial court as competent testimony, and that it influenced the rendition of the judgment. On account of this error, the judgment must be reversed.''

In Gambee v. Gambee, 24 App. Div. 446, 48 N. Y. S. 501, 502, it was held that testimony of interested parties to conversations between a deceased grantor and others tending to show the mental incapacity of the decedent were not admissible under provisions of the code resembling the statute referred to in the last cited case and under consideration here. The action was one to set aside a deed for undue influence. Holding that the admission of such testimony was reversible error, the court said:

''This being an equitable action, we should feel at liberty to disregard the error which was committed in the admission of the objectionable evidence to which reference has been made were we able to satisfy ourselves that it worked no serious harm to the defendants; but, as has been stated, it bore with great directness and no little force upon the principal issue in the case, and it is impossible to say that it was not an important factor in influencing the mind of the learned trial justice to reach the conclusion he did. We conclude, therefore, that justice requires the case to be retried.''

Citing an extended list of cases in its support, the note in Ann. Cas. 1917 C, 668, says that:

''In a trial before the court without a jury where the decision is influenced by incompetent evidence, the admission of such evidence constitutes reversible error.''

To the same effect is 4 C. J. 1001, § 2982, and cases cited in note 32.

In the case at bar, the ruling complained of was not made hurriedly in the course of the trial. On the contrary, the disposition of the objection made at that time was specifically reserved and several months later was announced. The testimony of John R. Bagley objected to bore directly and vitally upon the alleged mutual mistake of the parties claimed in plaintiff's fifteenth cause of action and on other important litigated issues. Without his testimony, there was no sufficient evidence in the record to establish that he and his brother were mistaken as to the contents of the real estate mortgage sought to be reformed in the cause of action last mentioned. The trial court must necessarily have been influenced by this incompetent testimony in reaching the conclusion it did. The error is serious and may not be overlooked.

8. It is claimed for appellants that the District Court erred in finding and decreeing that the real estate mortgage dated July 15, 1926 and pleaded in plaintiff's fifteenth cause of action should be reformed. What we have said above in the last subdivision of this opinion bears directly upon this point, but other phases of this matter may not be laid out of view and, in connection therewith, certain legal principles must be constantly kept in mind. In Stoll v. Nagle, 15 Wyo. 86, 86 Pac. 26, where the powers of a court of equity to reform an instrument on the ground of mistake were under consideration, this language was used:

"The mistake, however, must have been a mutual one. There must have been a meeting of minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the parties. Both the mistake and its mutuality must be established by evidence that is clear and satisfactory."

Similarly, in Grieve v. Grieve, 15 Wyo. 358, 89 Pac. 569, 570, 9 L. R. A. (N. S.) 1211, Ann. Cas. 1162, the same subject was more elaborately discussed in these words:

"Courts of equity will reform written contracts upon the ground of mistake, but not in all cases. When parties have reduced their contracts to writing the writing is presumed to contain the final agreement arrived at between them and to express their real intent. And when a mistake in the writing is claimed by a party, the burden rests upon him to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement actually entered into by the parties; that there is a mistake in it as to a material fact; that the mistake is mutual; and that it did not occur by, or result from, the negligence of the party claiming it. Judge Storey states the rule as follows: 'It is not, however, sufficient in all cases, to give the party relief, that the fact is material; but it must be such as he could not by reasonable diligence get knowledge of, when he was put upon inquiry. For if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him; since that would be to encourage culpable negligence.' "

An examination of the cases generally establishes the rule that where a party to a written instrument is inexcusably negligent in its execution, he is not entitled to have it reformed to relieve him from the consequences. 45 A. L. R. 701, note.

Concerning the execution of the mortgage in question, D. W. Brice, plaintiff's president, testified on cross-examination that it was the intention of the parties when he "wrote the security up" to take the mortgage dated July 15, 1926 in lieu of the earlier mortgage of September 24, 1925. In this connection, it will be recalled, as heretofore mentioned, that as written, each of these instruments undertook to secure exactly the same indebtedness and, with the exception of the town property included in the earlier mortgage, covered exactly the same land. Mr. Brice also testified positively that he drew this mortgage; that he, himself, did the typewriting in preparing it; that the mortgage of September 24, 1925, was before him and the members of the firm as he did this, they being all together at the time; that at the time, the members of the firm agreed to give the bank.

security on everything they had to protect the advances to be made by it on the highway construction work; that he thought at that time, this mortgage executed July 15, 1926 covered all the lands owned by Bagley Brothers and J. R. and N. G. Bagley; and that he did not discover that it did not include all such lands until about September or October, 1927, when the bank's directors were insisting that he obtain more security from the firm.

We are inclined to the view both that the evidence of mutual mistake of the parties as to the indebtedness to be secured and the lands to be used as security in this mortgage is far from "clear, satisfactory and convincing" and that the record shows such negligence in the preparation of the instrument as cannot be excused so as to authorize a court of equity to reform it and add to the description of the indebtedness the words "and other sums of money hereafter to be advanced by said State Bank of Wheatland to said mortgagor" and to the description of the lands encumbered some 1100 acres more.

It is not pointed out where in the record the president of the bank testified that at the time this instrument was executed, he himself thought that it contained this clause as to securing future advances. There is no testimony showing that the parties then discussed the matter of including all the lands, owned by the firm or the partners, in the instrument at that time being drawn or that Brice asked them if the description included all of their lands or that either of the parties said anything at all about these matters. The fact is he and they must have known the mortgage did not embrace them, for the town property included in the mortgage of September 24, 1925 was itself omitted from the mortgage then being prepared and, when the latter was being typed by Brice, the former was before the eyes of all. As we view the record, the most that can be claimed for the evidence bearing on this phase of the case is that there was some proof tending to show an oral agreement by the partners that

they would give security for future advances, but utter lack of proper proof that the mortgage of July 15, 1926 was to evidence and incorporate that agreement or the security to be given.

9. Finally, it is contended for appellants that the District Court was in error in allowing attorneys' fees in the case. The decree awarded an attorney's fee of $200 for the foreclosure of each of the four mortgages and the pledge of stock in the Service Filling Station Company, a total of $1,000. It has already been indicated that no fee should have been allowed for the foreclosure of the real estate mortgage dated September 24, 1925. Appellants rely for their position on this point, generally upon the provision of Section 6895, Wyo. Comp. St. 1920 (Wyo. Rev. St. 1931, § 88-3109) which forbids the maintenance of suit thereon by the holder of a claim against an estate, without first presenting same to the executor or administrator, except:

"An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against the property of the estate is expressly waived in the complaint, but no counsel fees shall be recovered in such action unless such claim be so presented."

It may here be observed that the clause denying counsel fees, appearing in the section as quoted was not carried forward into the Wyo. Rev. St. 1931, the law having been in that respect amended at the last session of the legislature. We do not think the section as quoted applicable here. All the mortgages ordered foreclosed provide for either a fixed attorney's fees of $200 or for a reasonable one, and the payment of the same is in each instance secured as part of the indebtedness which, as we understand it, is asserted to be firm indebtedness, and the liens claimed are upon alleged firm property. Until it is adjudged that the property affected is not firm property, but estate property, it is diffi-

cult to see how the section in question could be invoked. Nevertheless, an attorney's fee was allowed in foreclosing the pledge of the certificates of stock aforesaid. It is not pleaded or attempted to be proved that this pledge was given to secure any indebtedness other than for the payment of all monies that might be loaned by the plaintiff to the firm after July 15, 1926 and to secure the extension of time of payment of notes then due. As in the case of a mortgage, the entire matter of decreeing an allowance of any sum as an attorney's fee in a pledge foreclosure proceeding to be allowed and paid from the sale proceeds rests solely upon the contract of the parties and no allowance therefor can properly be made in the absence of such a stipulation. 42 C. J. 333. The fact that the note or notes evidencing the indebtedness provided for attorneys' fees for collecting same where, as here, the suit was based merely upon the contract of pledge and not upon the notes, would not control. See Evans v. Mansur etc. Co. (C. C. A.) 87 Fed. 275. The stipulations for such fees in the notes were simply the obligations of the parties signing the same and were not by contract made a lien upon the pledged property.

Upon the entire matter of this appeal, our conclusions, therefore, are these: That the judgment of the District Court foreclosing the chattel mortgage dated September 24, 1925, the chattel mortgage dated "Aug. .... 1927" and signed "Bagley Bros. by J. R. Bagley, J. R. Bagley" as modified by what has been said above concerning the application of the proceeds therefrom, the pledge of 22 shares of stock of the Service Filling Station Company as modified by the disallowance of an attorney's fee therefor, should be affirmed; that the judgment foreclosing the real estate mortgage of date September 24, 1925 should be reversed with instructions to enter judgment that plaintiff take nothing by its fourteenth cause of action; that the judgment reforming the real estate mortgage of date July 15, 1926 and foreclosing it as so reformed should be reversed

and a new trial granted for proceedings not inconsistent with the views expressed in this opinion.

*Affirmed in part as modified and reversed in part.*

KIMBALL, C. J., and BLUME, J., concur.