DOUGAL HERR, PLAINTIFF-APPELLANT, v. LOUISETTE HUGON HERR, DEFENDANT-RESPONDENT.

Argued March 9, 1953—Reargued April 20, 1953— Decided June 22, 1953.

*Mr. Meyer E. Ruback* argued the cause for appellant (*Messrs. Lum, Fairlie & Foster,* attorneys).

*Mr. John F. Ryan* argued the cause for respondent (*Messrs. Ryan & Saros,* attorneys).

The opinion of the court was delivered by

HEHER, J.   The appeal is from a judgment dismissing the complaint.

The gravamen of the pleaded cause of action is misrepresentation, fraud, deceit and concealment allegedly practiced by defendant whereby plaintiff was induced to make a "marriage settlement" on defendant which included a conveyance, after marriage, vesting in plaintiff and defendant an estate by the entirety in plaintiff's dwelling house in the Borough of Brielle, New Jersey, and also nondelivery of the deed.

Judge McLean found that plaintiff had not sustained the onus of proof of fraud. He was of the opinion that plaintiff's "testimony standing alone, met with defendant's denials, does not afford the clear and convincing proofs essential to entitle him to the relief he seeks." We certified defendant's appeal on our own motion.

The grounds of appeal challenge the findings made in the Superior Court as not in accordance with the evidence, both as to fraud and delivery; and error is also assigned upon the assessment of a counsel fee against plaintiff.

This is the case made by the complaint: In November 1949, after a brief acquaintance while on vacation in Bermuda, plaintiff, a widower 67 years of age, proposed marriage to defendant, a widow 52 years old, but she demurred "on the ground that such marriage would result in great financial loss and risk to her," representing to plaintiff that she was "the beneficiary for life or until remarriage of the income of a certain trust fund established by the last will and testament of one Gabriel Raphael Hugon of Manchester, England," the deceased father of her deceased husband, amounting in the net to 1,500 pounds sterling *per annum*, and that by the terms and conditions of the trust "her income would cease entirely and irrevocably if she should remarry," and "she had no property, or income aside from the income from said trust," and "for those reasons she could not afford to remarry without a substantial marriage settlement, adequate to secure her future financial security in lieu of said life annuity." Plaintiff, relying upon the truth of the representations, "promised defendant that if she would accept his offer of marriage he would, in addition to supporting her as his wife, secure her financial future to the extent of his means in the

event that he should predecease her by transferring to her his entire estate, such transfers to take effect upon his death and to be made in consideration of and partial reimbursement for her loss of income" under the trust. Defendant accepted plaintiff's proposal of marriage "subject to said proposed provision for her future financial security in the event that plaintiff should predecease her." The marriage was solemnized December 3, 1949, at Westfield, New Jersey. Immediately following the marriage, and in reliance upon the truth of the "representations," and to effectuate the "marriage settlement," plaintiff executed "riders to establish defendant as beneficiary of plaintiff's life insurance policies, a last will and testament and (for the purpose of minimizing inheritance taxes) a deed of conveyance" for the lands in suit "intended when delivered to convert plaintiff's estate" in the lands "into an estate by the entirety in plaintiff and defendant." In order that "the transaction might be completed by the delivery of all of the instruments at one time, such time to be arranged after all of them should be executed, plaintiff only executed said deed of conveyance on December 3, 1949 and caused it to be recorded in the Clerk's Office of Monmouth County on December 14, 1949." After recording, the county clerk returned the deed "to plaintiff's attorney as directed"; and the "deed was never delivered to defendant, nor did plaintiff ever intend to make a present delivery of it, nor were any of the other instruments delivered." "On or about December 15, 1949, plaintiff became suspicious of the truthfulness" of defendant's representations "because she refused to send to England for a copy" of the Hugon will, "as she had agreed to do"; and he "thereupon caused an investigation to be made which disclosed" that the deceased Hugon "had not created any trust whatsoever in favor of defendant, by his will or otherwise," and defendant had not been in receipt of an income in any amount from the Hugon family subsequent to the death of Gabriel on October 11, 1939, and "had not been an annuitant under any trust whatsoever."

It is averred that had plaintiff known of the falsity of the "representations," he "would not have agreed to make said settlement."

Plaintiff seeks judgment: (a) voiding the agreement to make the marriage settlement, and (b) decreeing the conveyance to be void or, in the alternative, the rescission of the deed and a reconveyance to plaintiff.

The nonexistence of the asserted trust fund or "life annuity" is conceded; the making of the representation is denied. Indeed, defendant asserts in her answer to the complaint that she "refused several proposals of marriage by the plaintiff, without qualification, and finally accepted tentatively, only on condition that her final answer" be deferred until "opportunity" was had the "better to know each other," and it could be determined whether or not plaintiff's children would "object" and "constitute a hindrance to a happy marriage"; and that the execution of the deed "was purely a voluntary act on plaintiff's part, independent of any agreement, commitment or previous arrangement, which deed she never saw, and of which she knew nothing, excepting that it was executed and recorded as plaintiff told her, because, as his wife he felt she was entitled to it as a gift," and she "has no information" respecting the will, but she denies that its "execution * * * was the result of any arrangements, commitment, promise or agreement prior to the marriage." And defendant's testimony accords with the answer. There had been no discussion whatever before the marriage "about any financial arrangement or money or anything else in connection with impending marriage." Shortly after their meeting in Bermuda, she agreed to the marriage, "but on one condition that" she "should meet his children first and they would agree to the marriage." She first "heard" of the deed in question on December 26, 1949, and it was the plaintiff who spoke of it. He said: "I have seen a friend who is very discreet and I want you to have that property and I may give that property to you on both names and also a will." There had been no prior discussion of a will.

Plaintiff acknowledges that if, "as part of the offer of marriage and uninduced by any fraudulent misrepresentation by the defendant, the proposal had included the promise to make the deed," the deed would be altogether invulnerable; the "sustaining consideration for the deed would be the defendant's performance of her promise to marry." But it is insisted that such is not the situation revealed by the pleadings and the proofs, for under defendant's version of the transaction a promise of a property settlement is "ruled out as a consideration or inducement for the marriage," and the conveyance was a pure gift, induced by love and affection alone, and "not the marriage, for the marriage had already taken place," while the foundation of plaintiff's pleaded cause of action is a promise "collateral to his offer of marriage" induced by defendant's "misrepresentation that her remarriage would result in the loss of an English annuity," to "make good the loss by making a property provision for her"; and that "on the evidence of either side it is clear that no enforceable ante-nuptial agreement or property settlement was made between" the parties.

There was no post-nuptial contract, it is conceded, "since the marriage, being past, could not constitute a valid consideration." But it is said that there was a post-nuptial settlement on the wife, and it matters not whether it be deemed a "gift in fulfillment of an earlier promise, though unenforceable, or a present donation unrelated to any antecedent promise," for in either event "any fraud inducing the gift vitiates it."

It is urged that the evidence offers no support for the conclusion that "the marriage was the inducement, i. e., the consideration for the deed"; and the critical issue is stated to be "whether the deed (made in fulfillment of an earlier promise, as the plaintiff claims, or as a later gift, as the defendant claims,) was or was not induced by the defendant's misrepresentation." The reasoning is that plaintiff's promise to provide for his wife "is altogether distinct from and independent of the engagement to marry," and was designed "to remove an impediment to the making of the contract to

marry," and the "sole consideration of the marriage was, concededly, the mutual agreement of the parties to undertake and perform the duties and obligations incident to the marriage, whereas the promise to make provision for the wife was predicated solely upon her surrender of the alleged annuity."

But, whatever preceded the marriage, the post-nuptial conveyance was essentially voluntary; and the deed itself, after deliberation upon the choice of words, declared the consideration to be "the sum of one dollar, the marriage between the grantees, and good and valuable consideration, lawful money of the United States, to him in hand paid," and so on, according to the usual formula of receipt and grant; and thus the plaintiff himself, in formal and indubitable terms, established the marriage as the consideration for the conveyance. Whatever its legal effect as consideration related to an executory promise, this was the motive for the conveyance.

A parol ante-nuptial agreement for a property settlement in consideration of marriage is within the statute of frauds (*R. S.* 25:1–5) and unenforceable; marriage is not in itself deemed such part performance of the agreement as will avert the operation of the statute and render it enforceable in equity. *Russell v. Russell*, 60 *N. J. Eq.* 282 (*Ch.* 1900), affirmed 63 *N. J. Eq.* 282 (*E. & A.* 1901); *Pennsylvania Railroad Co. v. Warren*, 69 *N. J. Eq.* 706 (*Ch.* 1905); *Watkins v. Watkins*, 82 *N. J. Eq.* 483 (*Ch.* 1913), affirmed 85 *N. J. Eq.* 217 (*E. & A.* 1915); *Alexander v. Alexander*, 96 *N. J. Eq.* 10 (*Ch.* 1924); *Elmer v. Wellbrook*, 110 *N. J. Eq.* 15 (*Ch.* 1932).

An unexecuted parol ante-nuptial promise for à settlement lays no legal duty or obligation on the promisor; and a post-nuptial settlement made pursuant to a parol ante-nuptial promise, followed only by marriage, is "voluntary, in the strongest sense of that term"; marriage is not part performance of the contract, for "if it were, there would be an end of the statute * * * [and] every parol contract followed by marriage would be binding"; carrying into effect the parol contract after marriage, by a deed, "amounts to no more

than a voluntary settlement." *Manning v. Riley,* 52 *N. J. Eq.* 39 *(Ch.* 1893).

Thus, the conveyance here constituted a voluntary post-nuptial settlement; plaintiff was under no duty or compulsion to make the transfer. The policy of this provision of the statute of frauds is "to render hasty and inconsiderate oral promises, made to induce marriage, without legal force, and thus to give protection against the consequences of rashness and folly." *Manning v. Riley,* cited *supra.* Plaintiff was free to make the conveyance, or not to make it, according to his untrammeled judgment; and his conventional declaration of marriage as the consideration imparts character and meaning to the conveyance at variance with the concept of a gift related only to the loss of an annuity. The undoubted design was to make provision for the wife against privation in the event of her husband's prior death; and it would seem to be a matter of indifference whether or not the need had become the greater by the loss of an annuity. Protection against want was the *desideratum,* and the provision was expressed to be made in consideration of marriage. Such was the intention, and the intention controls. The loss of an annuity did not induce the settlement.

An executed post-nuptial gift or settlement is effective *inter partes,* even though lacking in the consideration essential to an enforceable executory contract. A gift is a transfer without consideration. *Frank v. Gaylord,* 119 *N. J. Eq.* 427 *(Ch.* 1936) ; *Cessna v. Adams,* 93 *N. J. Eq.* 276 *(Ch.* 1921) ; *Austin v. Young,* 90 *N. J. Eq.* 47 *(Ch.* 1919) ; *Landon v. Hutton,* 50 *N. J. Eq.* 500 *(Ch.* 1892) ; *Jones v. Clifton,* 101 *U. S.* 225, 25 *L. Ed.* 908 (1880) ; *Rodgers v. Rodgers,* 229 *N. Y.* 255, 128 *N. E.* 117, 11 *A. L. R.* 274 *(Ct. App.* 1920).

The burden of proof of a fraudulent inducement has not been sustained.

On this inquiry, the subsequent change in the marital relations, attitudes and motivations are elements to be regarded, as tending to rationalization. The observations of Vice-Chancellor Stevenson are apropos:

"When the relations of the man and his wife cease to be harmonious, when divorce or separation comes, the man finds himself disappointed in his expectations, and he very much regrets the disposition of property which he theretofore made. No doubt there are situations of this kind where there is hardship, and some future laws may provide for the readjustment of family settlements in case of divorce. Under our present system of laws the destruction of harmonious and confidential relations between the man and wife, their complete estrangement, and even divorce, create no new equity in favor of the husband with respect to land which he originally donated to his wife when both parties contemplated that their affectionate and confidential relations would endure throughout their lives, and that both would therefore share in the benefits of the donated property." *Warren v. Warren*, 88 *N. J. Eq.* 612 (*E. & A.* 1918).

And the proofs establish the essential element of delivery. The conveyance was made to husband and wife; and the circumstance that, after recording, the deed was retained by the husband does not repel the inference otherwise compelling of his intention to make the deed immediately effective as a conveyance of the land. Indeed, plaintiff himself revealed in his testimony a design by the conveyance to take the property out of the inheritance tax category; and delivery was essential to the effectuation of that purpose.

The essence of delivery is the intent to "perfect the instrument" and thereby make an immediate transfer of the title to the grantee; and the intent may be deducible from the circumstances or the acts or words of the grantor. *Ruckman v. Ruckman*, 32 *N. J. Eq.* 259 (*Ch.* 1880); *Jones v. Swayze*, 42 *N. J. L.* 279 (*Sup. Ct.* 1880); *Blachowski v. Blachowski*, 135 *N. J. Eq.* 425 (*Ch.* 1944). It does not matter that defendant had not seen the deed; her husband held the instrument for her as well as for himself, as tenants by the entirety. *Vought's Ex'rs. v. Vought*, 50 *N. J. Eq.* 177 (*Ch.* 1892); *Mower v. Mower*, 367 *Pa.* 325, 80 *A.* (*2d*) 856 (*Sup. Ct.* 1951).

The original complaint, filed June 1, 1950, included a count for nullity of the marriage. On June 11, 1951 there was a voluntary dismissal of that count; and an allowance of $2,500 was made to defendant's counsel as for services in

a matrimonial action, under *Rule* 3:54–7(*a*). There was no award of counsel fees in this non-matrimonial suit.

We think that a fee of $1,000 should be assessed against plaintiff; counsel must look to his client for such additional compensation as may be reasonable. The circumstances did not call for the application of *Rule* 3:54–8.

The judgment is accordingly modified and, as so modified, affirmed.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and BRENNAN—5.

*Opposed*—None.