**B. R. TWYFORD et al., Appellants,**

**v.**

**Grace HUFFAKER et al., Appellees.**

Court of Appeals of Kentucky.
Oct. 17, 1958.

As Modified on Denial of Rehearing
May 22, 1959.

Bruce H. Phillips, Monticello, Parker W. Duncan, Duncan & Huddleston, Bowling Green, for appellants and cross-appellees.

John A. Huffaker, Louisville, for appellees and cross-appellants.

CLAY, Commissioner.

This action was instituted in 1955 by the appellants and cross-appellees, B. R. Twyford and Matilda Twyford, against the appellees and cross-appellants, Grace and James Huffaker and Alonzo and Flossie Twyford, to set aside a deed executed in 1950. The appellants, father and mother of Grace Huffaker and Alonzo Twyford, alleged that Grace and Alonzo, by fraud, induced them to execute a deed which conveyed certain realty, composed of a "farm tract" and 10 "timber and mountain tracts," to the appellees. This appeal is from that part of a judgment which held the "farm tract" to be the fee simple property of the appellees. The cross-appeal is from that part of the judgment which ordered reformation of the deed so as to exclude therefrom the "timber and mountain tracts."

The appellants contend that the trial court erred in not setting aside the whole deed because (1) the confidential relationship of the parties imposed upon the appellees the burden of establishing the validity of the deed by clear and convincing evidence; and (2) answers of the advisory jury to interrogatories submitted by the trial court showed there was a failure of consideration. The appellees contend that (1) love and affection was sufficient consideration for the deed; and (2) there

was no proof sufficient to set aside the deed or reform any part thereof on the ground of fraud or mistake.

A short résumé of family relationships preceding execution of the deed is necessary to a proper understanding of the case. In a previous lawsuit Grace and Alonzo sided with their parents and against their twin brothers, Beckham and Bryan. See Twyford v. Twyford, Ky., 243 S.W. 2d 930. That case resulted in a ruling favorable to the parents. It created considerable ill will between the parents and their twin sons. Before the culmination of that suit in 1951 the deed now in question was executed. At the time the deed was executed Mr. Twyford was 77 years of age and Mrs. Twyford was 73. At that time Grace lived in Louisville and Alonzo lived in Illinois.

Pursuant to her father's directions, Grace got certain deeds which she delivered to him. He, in turn, delivered them to an attorney. The attorney, acting under the father's verbal directions, prepared the deed in question and delivered it to the appellants' home on the following day. The deed was read to the appellants but the lengthy descriptions of the land were omitted in the reading. The appellants kept the deed overnight and on the following day it was executed before the Wayne County Court Clerk. Some time thereafter it was either delivered or mailed to Grace, in Louisville, and she waited several years to have it recorded. The recordation took place shortly before this action was instituted.

The deed retained a life estate for the appellants and gave to Grace and Alonzo a one-half undivided interest each in the described land. The appellants, elderly but alert, claim that Grace, in consideration for the conveyance, promised to build upon the property and make her home near her parents. She was to give them the care they might require when they became infirm with age. They claim further that inclusion of the timberland in the deed was never intended, and occurred through

Grace's procurement and delivery to them of deeds covering more of their land than they wished to convey. It is claimed that their advanced age, poor eyesight and faulty hearing precluded a proper inspection of the deeds brought them by Grace and the deed they executed to her and Alonzo.

The appellees argue that the ill feeling existing between their parents and the twins caused the appellants to convey all of their remaining real property to their loyal offspring (Grace and Alonzo). They say that no consideration, other than love and affection, was either discussed or contemplated.

In response to the trial court's questions the advisory jury found that (1) Grace agreed to move to Wayne County to care for the appellants if they would execute the deed; (2) the appellants executed the deed because of bad feeling toward their twin sons, Beckham and Bryan, or because they felt these sons had already received their share of the property; and (3) the deed described more property than the appellants intended to convey.

The trial court opined that there was an inconsistency in the findings of the advisory jury, and therefore disregarded finding No. 1. The judgment was in accord with findings Nos. 2 and 3 of the advisory jury.

■ We believe finding No. 1 was properly disregarded. Under CR 39.03, the trial court could disregard the findings of the advisory jury. See Clay, CR 39.03, p. 371. In this case there was no proof, other than the unsupported statements of the appellants, that Grace promised to return to Wayne County to live near them. The circumstances indicate that to have been highly improbable. Grace's husband worked in Louisville and was not then eligible for retirement. It would have been most unlikely for Grace to promise to build a home on property in which she could receive only a one-half undivided interest upon the death of her parents. Under such a promise she would have been required to furnish consideration for both herself and Alonzo. She would have established a home far from her husband's place of employment. The contention that Grace made such a promise lacks credence as well as proof.

Furthermore, we do not believe there was a confidential relationship between the parties which implied fraud so as to place the burden of proving the validity of the instrument upon the appellees. Showing that Grace procured for her father the deeds from which the instrument in question was drawn was insufficient to impute fraud when she was not present at the drawing, reading or acknowledgment of the instrument. Where there is no evidence that a parent was under the control and domination of a child, the burden of proof to show that a conveyance by the parent to the child was fairly and understandingly entered into is not on the child. 16 Am.Jur., Deeds, section 374. It does not appear that Mr. Twyford showed himself to be under the domination of anyone or anything save his own strong will?

■ We come now to the question of whether the inclusion in the deed of the "timber and mountain tracts" was due to fraud or mistake. It appears from the evidence that the farm and timber lands were independent tracts which had been obtained under separate deeds. Appellants testified that all of the transactions and conversations with their daughter related solely to the farm lands. The daughter procured the various deeds from which the description in the deed under consideration was drawn, and the father said he assumed they related only to the farm lands. Because of this assumption he did not read the description which included the timberland, nor was this description read to him. Subsequent correspondence between the father and daughter related only to the farm land, and appellants were not apprised that they had conveyed the timberlands until they read the deed after its recordation, shortly before this suit was

filed. There was ample evidence that a mistake was made by the grantors.

 The daughter contends there was no showing of mutuality of mistake. Assuming this to be true, there are two grounds upon which a court of equity may still grant relief to the grantors. The first of these is that her actions may have contributed to such a fundamental mistake on the part of the grantors that the minds of the parties did not meet with respect to the conveyance of the timberlands. See Bell v. Carroll, 212 Ky. 231, 278 S.W. 541; and Murphy v. Torstrick, Ky., 309 S.W.2d 767.

There is, however, a more significant controlling principle of law. That is, where property is conveyed as a gift, the transaction is by its very nature unilateral, and the grantee's intent or conduct (other than acceptance) plays no part in fixing the rights of the parties. Mutuality of mistake as the basis of relief need only be established when there is a mutuality of obligation, as in a contractual relationship.

It is well recognized that a person making a gift or a voluntary conveyance is entitled to restitution if he has made a basic mistake concerning the amount of property transferred. Restatement of the Law, "Restitution", Section 26 and 39; 44 Am.Jur., Reformation of Instruments, Section 31, page 599. In Jonas v. Meyers, 410 Ill. 213, 101 N.E.2d 509, 515, the court said:

"Many jurisdictions, however, recognize an exception to the general rule and hold that the donor-grantor of a voluntary conveyance, or his heirs or successors in title, may have reformation as against the grantee, on the ground of mistake and in such case mutuality of mistake is not essential, it being immaterial that the grantee was not cognizant thereof. (Citing cases.)"

To the same effect is Laundreville v. Mero, 86 Mont. 43, 281 P. 749, 752, 69 A.L.R. 416, 422. Therein the court stated:

"In so far as voluntary conveyances are concerned, the contracts are by their very nature unilateral. They are lacking in mutuality. But we think a court of equity has inherent power in a proper case to grant relief by reformation of a voluntary conveyance so as to have the deed express the intention of the grantor, even though, strictly speaking, the mistake is not mutual."

We believe the circumstances of this case call for the application of the foregoing principle, and it was unnecessary to establish an actual mistake on the part of the daughter.

On the factual question of mistake by the grantors both the advisory jury and the trial court determined that the deed described timber and mountain lands the grantors did not intend to convey. This finding of fact by the court may not be set aside unless clearly erroneous. CR 52.01. We are of the opinion that the Chancellor properly granted relief based on such finding.

The judgment is affirmed on the original and cross-appeals.