HANS P. SCHINNELL, *Respondent,* v. BEN DOYLE *et al.,*
*Appellants.*

*Benson, Chadwick, Stege & Wines* and *Kirk R. Wines*, for appellants.

*Guttormsen, Scholfield & Stafford* and *John A. Hamill*, for respondent.

FARRIS, A.C.J.—Prior to December, 1964, Mr. Doyle was the club professional at the Fort Lewis golf course and operated a golf equipment shop under a concession agreement with the army. In December of that year, he accepted a position at another golf course and entered into negotiations to sell the merchandise and equipment at the Fort Lewis pro shop to the army. When the army decided not to operate the pro shop, he sought to have his assistant at the club, Mr. Thomas E. Denham, purchase the inventory and assume the management of the course. Financing was arranged through the National Bank of Washington, which agreed to loan Denham the sum of $50,000. Approximately $48,000 of this amount was paid to Doyle for his inventory and $2,000 was used as operating capital by Denham. The bank required Doyle to sign an agreement by which he promised to purchase Denham's promissory note upon demand of the bank.

Denham reduced the outstanding balance to $25,000 by September, 1965, at which time negotiations for the renewal of the note took place. Doyle executed a second note purchase agreement on September 22, 1965, in order to induce the bank to renew the note to Denham in the amount of the $25,000 balance then due. The note was renewed but Denham defaulted on the payments. On April 11, 1967, the bank made demand upon Doyle to perform according to his agreement to purchase the note. Doyle refused.

In addition to obtaining a note purchase agreement from Doyle, the bank had a guarantee of Denham's general indebtedness up to the amount of $5,000 each from 10 individual guarantors for a total of $50,000. When Denham defaulted and Doyle refused to perform, the bank renegotiated the amount of monthly payments to be made by

Denham with the 10 guarantors and received from them a new general guarantee of indebtedness. These agreements were executed without the knowledge or consent of Doyle.

Ultimately, the bank sought and had reimbursement from the 10 guarantors. It then assigned all of its rights in Denham's promissory note and the Doyle note purchase agreement to the 10 guarantors. On March 20, 1969, they made demand upon Doyle to purchase the note in accordance with his September 22, 1965, agreement to repurchase. By letter of March 20, 1969, to the bank, Doyle revoked his agreement to purchase the note. Nine of the guarantors thereafter assigned their rights against Doyle to Hans P. Schinnell, a 10th guarantor, for the purpose of bringing this action.

The trial court found Doyle liable on the note purchase agreement, but dismissed Schinnell's action based on the promissory note on the theory that the note was mistakenly signed by Doyle. Doyle appeals from the trial court judgment against him, and Schinnell cross-appeals from the trial court's dismissal of his claim against Doyle based upon Doyle's signature on the promissory note. Schinnell argues that the court erred in finding that Doyle signed the note by mistake.

We treat first the question of whether the trial court properly excluded under the parol evidence rule certain testimony offered by Doyle. Doyle argues that he should have been allowed to prove that there was an oral agreement between him and the bank to the effect that his only obligation, regardless of the terms of the note purchase agreement, was to purchase any remaining golf shop inventory in the event that Denham defaulted on the promissory note. Doyle asserts that parol evidence, if admitted, would have shown that the written agreement did not contain the entire agreement of the parties. He based his assertion upon the uncontradicted testimony of a bank official who was largely responsible for setting up the loan. The officer testified that Doyle's obligation was limited to the purchase, upon the bank's request, of inventory which remained un-

sold in the event of a default by Denham. At the time of trial, the golf shop inventory had been sold and the funds applied to reduce the outstanding balance on the note. Doyle argues that his liability was therefore terminated.

█ Parol evidence is admissible only if a contract is ambiguous as a matter of law. Such evidence should not be introduced for the purpose of creating ambiguity but should be admitted only when the court has determined that parol is necessary in order to explain or remove ambiguity apparent on the face of the instrument. *Simpson Timber Co. v. Palmberg Constr. Co.*, 377 F.2d 380 (9th Cir. 1967); *Schwieger v. Harry W. Robbins & Co.*, 48 Wn.2d 22, 290 P.2d 984 (1955). Where a contract is not ambiguous, its meaning should be ascertained from the language of the contract and not from parol evidence concerning it. *See Poggi v. Tool Research & Eng'r Corp.*, 75 Wn.2d 356, 451 P.2d 296 (1969).

> [W]here there is no ambiguity, all conversations, contemporaneous negotiations, and parol agreements between the parties prior to a written agreement are merged therein. In the absence of accident, fraud, or mistake, parol evidence is not admissible for the purpose of contradicting, subtracting from, adding to, or varying the terms of such written instruments.

*Fleetham v. Schneekloth*, 52 Wn.2d 176, 178, 324 P.2d 429 (1958). The rule is controlling even though one of the parties contends, as here, that part of the agreement had been committed to writing and another part of the transaction was embodied in an oral agreement. *See Buyken v. Ertner*, 33 Wn.2d 334, 205 P.2d 628 (1949).

The note purchase agreement provided that Doyle was unconditionally bound to purchase Denham's promissory note as consideration for the bank's renewal of the loan to Denham, and such purchase was required regardless of whether there existed any default in payments.[1] The lan-

---

[1]The note purchase agreement provided in part: "I agree to purchase from you the above described note at par and accrued interest on demand at any time subsequent to November 30, 1966. This agreement is unconditional, regardless of whether or not there shall exist, at the

guage of the note purchase agreement was not ambiguous. The parol evidence offered by Doyle would have had the effect of contradicting or varying the terms of a written agreement that was clear and unambiguous. It was properly excluded.

The second issue concerns the legal effect of the note purchase agreement signed by Doyle in 1965. He assigns error to the trial court's conclusion of law 3:

> By the agreement . . . and the surrounding circumstances, the defendant Doyle and his marital community became a primary or principal guarantor or surety with respect to the September, 1965, note and its payment while the plaintiff and his nine assignors as limited general guarantors of indebtedness were secondary or sub-sureties or sub-guarantors for that note and its payment. The plaintiff and his nine assignors having satisfied the principal obligation, by assignment, by subrogation, and by general suretyship law are entitled to reimbursement from the defendant Doyle and his marital community for amounts paid by them.

It is Doyle's contention that he is entitled to offset the obligations of Schinnell and his nine assignors as guarantors against any obligation he might have to purchase the note. Doyle argues that Schinnell and his nine assignors should be liable under their original, continuing guaranty agreements. In any event, Doyle argues, he should not be held liable as the prime guarantor of the Denham obligation; since Schinnell and his assignors were sureties to the same obligation, they should share equally the liability for Denham's default. We do not agree.

■ Subsuretyship is defined in Restatement of Security § 145 (1941) as "the relation between two or more sureties who are bound to answer for the same duty of the principal where one, the principal surety, in respect of the other, the subsurety, has the whole duty of performance." Comment *a* to that section provides:

> Where there are two sureties, the usual relation is cosur-

---

time of demand as aforesaid, or any other time, a default in payments under said note or any other default thereunder."

etyship, but by agreement between them or because of the equities of the sitation, one of them as between themselves, may be liable for the entire loss caused by the default of the principal and hence not a cosurety.

Section 146, comment c states:

The equities of the sureties are not equal and their relation is subsuretyship rather than cosuretyship where one surety has undertaken a general obligation against defaults of the principal while the other surety has undertaken an obligation in respect of specific defaults, and the specific default occurs. . . . In such a case, the surety against the specific default is the principal surety and the general surety the subsurety.

▮ Here, Doyle signed the note purchase agreement to induce the bank to make the loan to Denham. Doyle initiated loan discussions with the bank. The purpose of the loan was to enable Denham to assume the operation of the Fort Lewis golf shop, but the arrangement was beneficial to Doyle. The obligation of Schinnell and his nine assignors was that of limited guarantors of the general indebtedness for Denham. Doyle undertook an obligation with respect to a specific default of Denham, to wit: the $25,000 loan and note of September 22, 1965.

▮ The trial court properly ruled that Doyle was the surety primarily liable for the Denham note and that Schinnell and his nine assignors were subsureties. They were then entitled as assignors of the rights of the bank to reimbursement from Doyle, the principal surety, for the amount that they had been required to pay. *See Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 459 P.2d 389 (1969); 4 A. Corbin, Contracts § 901 (1951); Restatement of Security § 145, comment a (1941).

Doyle next assigns error to the failure of the trial court to rule that he was released from liability; because without notice to him, the bank, Denham, Schinnell and his nine assignors entered into an agreement which extended the time for payment by allowing Denham to pay installments of $200 per month.

■ This contention overlooks the fact that the agreement was not entered into until after demand was made upon Doyle in accord with his September, 1965, agreement to purchase the note, which was then in default. Doyle failed to respond to the demand. Schinnell and the bank thereafter on January 26, 1968, executed the agreement which provided for monthly payments and thereby extended the time of payment. After refusing to perform according to the terms of his agreement, Doyle cannot now urge that the extension of time has operated effectively to release him. The bank merely sought to mitigate any damages before initiating action for breach of the agreement to repurchase the note. *See Snowflake Laundry Co. v. MacDowell,* 52 Wn.2d 662, 328 P.2d 684 (1958); *Westland Constr. Co. v. Chris Berg, Inc.,* 35 Wn.2d 824, 215 P.2d 683 (1950).

Doyle argues that in any event there was no further demand for payment made upon him by anyone following the initial demand of April 11, 1967, until the institution of this action. The demand made by the bank on April 11, 1967, obligated Doyle to purchase the note. He was advised that the note was in default, although this was not a prerequisite to his duty to perform. He refused to perform. No further demand was necessary.

■ Schinnell cross-appeals from the finding of the trial court that Doyle signed the Denham promissory note by mistake and was therefore not liable on the note as a co-maker. This was a factual question decided by the trial court upon substantial evidence. It will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Affirmed.

JAMES and SWANSON, JJ., concur.