Marie B. MAY, Appellant (Defendant),

v.

Roy McCORMICK, By and Through Laurence SWALLOW, Guardian of the person and estate of Roy McCormick, Incompetent, Appellee (Plaintiff).

No. 84–289.

Supreme Court of Wyoming.

Aug. 13, 1985.

Robert M. Seipt and Steven M. Avery, Riverton, for appellant.

D.N. Sherard, Stephen N. Sherard and Rex E. Johnson, of Sherard, Sherard & Johnson, Wheatland, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant was given physical possession of a deed from her stepfather, which she recorded. The deed purported to vest title in the stepfather and appellant as joint tenants. In an action to set aside the deed, the trial court granted summary judgment to appellee, holding there was no delivery of the deed. Appellant states the issues as:

"Whether the summary judgment entered in this case on October 16, 1984, is an appealable judicial determination?

"Whether the court erred in finding that there was no genuine issue of fact on the question of delivery and therefore voided the deed of October 26, 1982?"

We will reverse.

On or about October 26, 1982, appellant Marie May, stepdaughter of appellee Roy McCormick, accompanied her stepfather to the office of Frank J. Jones, attorney at law, in Wheatland, Wyoming, for the purpose of making a will and a deed. Mr. Jones prepared a will for Roy McCormick which left all of his property to Marie May. Mr. Jones also prepared a deed conveying a ranch from Roy McCormick to himself and Marie May as joint tenants. The subject ranch was previously owned by Marie May's father and mother. Upon the father's death, the mother became owner and upon her death Roy McCormick became owner. Marie May's grandmother was the original homesteader, owning the property before Marie May's father. Marie May recorded the deed on January 6, 1983, in Platte County, Wyoming. Laurence Swallow, guardian of Roy McCormick, instituted a lawsuit to set aside the October 26, 1982, deed and quiet title.

In granting a summary judgment in favor of appellee, the court relied on testimony of appellant and Frank Jones which was produced at another proceeding. In his decision letter, the trial judge said:

"* * * Both defendant May and Attorney Frank Jones, who drafted the instrument are consistent in that the purpose of the custody was not to affect a present transfer. Based upon said testimony the court finds as a matter of law there was no delivery and that therefore there was no transfer of interest."

We will address appellant's second assignment of error first.

I

In determining the propriety of granting summary judgment, we first review our applicable rules. In *Western Surety Company v. Town of Evansville*, Wyo., 675 P.2d 258, 261 (1984), we said:

"* * * On review our duty is the same as that of the district court in determining whether and to what extent summary judgment should be entered. *Dubus v.*

*Dresser Industries,* Wyo., 649 P.2d 198 (1982).

"A party seeking summary judgment has the burden of proving that there is no genuine issue of material fact. Any doubt as to the existence of such an issue is resolved against the party carrying that burden. [Citations.]

\*　　\*　　\*　　\*　　\*　　\*

"In considering all of the materials presented, both in support of and in opposition to the motion for summary judgment, we view the record in a light most favorable to the party opposing the motion for summary judgment and give to that party the benefit of all favorable inferences that might be drawn from those materials. [Citations.]"

In *Western Surety* we quoted with approval *Continental Aircraft Sales v. McDermott Brothers Company,* 316 F.Supp. 232, 236 (D.C.Pa.1970), as follows:

"'\* \* \* The court, upon considering a motion for summary judgment is compelled to closely scrutinize the moving party's document; whereas, the opposing parties' papers, if any, should be treated with some indulgence.'"

■ In a summary judgment proceeding, the burden is on the moving party to demonstrate clearly that there is no genuine issue of material fact. *Lane v. Busch Development, Inc.,* Wyo., 662 P.2d 419 (1983). See also *Dudley v. Eastridge Development Company,* Wyo., 694 P.2d 113 (1985).

Part of the testimony of Marie May given in another proceeding and brought to our attention by appellee was as follows:

"Q. (By Stephen N. Sherard) And what was Frank's reaction? Do you recall Frank's words or could you paraphrase what he said?

"A. (Marie May) He did it just like Roy wanted him to do it. He made the deed, and then he asked him on the personal property, 'How do you want to do that, Roy'. And he said, 'I want to leave it to her. She will have to have it to make a living on the place with.' And he said, 'I want her to have it'."

\*　　\*　　\*　　\*　　\*　　\*

"Q. Are we talking about the property included in the will and the deed both?

"A. Yes. Now, the deed is a joint deed.

"Q. But it would automatically go to you, all of it, upon his death, but it is still your understanding that you were not to get any of it, or any interest in that property, until Roy died?

"A. Well, I don't know how to say that because as a joint tenant on it I don't know."

Part of the testimony of Frank Jones given in a previous proceeding was:

"Q. I guess my question is, or the problem that I have is, that the will would have taken care of the property without the deed. Was there any discussions that you can recall as to the reason why there was a deed?

"A. Right. He said the real estate was the biggest asset in the estate, value-wise, and he wanted to avoid probate on that.

"Q. Did you discuss value of that estate?

"A. I don't think specifically. I asked him about livestock, I recall. I don't think I inquired into bank accounts. I don't recall because he, again, somewhat knowing the family background, I was pretty sure in my own mind that there was not any estate tax problem, so we didn't spend much time at all on estate planning as such.

"Q. But, I guess I understand you to say that the deed was for the purpose of taking care of estate planning or gift and estate tax purposes?

"A. Right. He said he wanted to get the real estate, typically, out of estate, so it wouldn't have to go through Court again. I don't recall his language, but he wanted to have it pass, probably he said, without lawyers getting their fingers in the pot. I don't remember if he said that or not, but he sure could have."

It is clear in the testimony that Marie May did not realize the legal significance of a deed in joint tenancy. Testimony by Marie May that suggests that she was not to get the property until after the death of Roy McCormick, in context, was not referring to legal title but to the benefits of title, such as income from property and physically occupying the property. If the deed was to be effective only after the death of Roy McCormick, as appellee seems to contend, it would not have been logical to make a deed in joint tenancy.

In *Rothney v. Rothney*, 41 Cal.App.2d 566, 107 P.2d 294, 296 (1940), it was stated:
"'* * * Delivery is a question of fact which is to be determined from the circumstances surrounding the particular transaction. The intention to pass immediate and irrevocable title to the property interest is the essential fact for consideration. It should be stated that there is a vital distinction between the use of the term delivery, which might simply designate the mere transfer of physical custody or possession of the deed, and the use of the term in legal contemplation as constituting the necessary delivery required for "execution" of a deed. This distinction must be kept in mind in considering the circumstances presented by this action.'"

"A strong presumption of delivery of a deed arises from its possession by the grantee or one claiming under him. In other words, possession of a deed of property by the grantee therein named * * * is prima facie evidence of its delivery, and of the grantor's intent then to vest in the grantee the title to the property therein described. * * *" 23 Am. Jur.2d Deeds § 159, p. 183 (1983).

"The fact that the grantor reserved a life estate for himself or contemporaneously received a life lease from the grantee is some evidence that an immediate conveyance of title was contemplated, on the theory that the reservation indicates an intent that title should immediately vest in the grantee. Similarly, evidence of the grantor's intention to reserve an equitable right or equitable title, or a showing of an agreement that the grantee would reconvey the legal title to the grantor, necessarily indicates an intent that title was to pass to the grantee. * * *" 23 Am.Jur.2d Deeds § 167, p. 189. (1983).

In *Herr v. Herr*, 13 N.J. 79, 98 A.2d 55, 59 (1953), it was stated:
"And the proofs establish the essential element of delivery. The conveyance was made to husband and wife; and the circumstance that, after recording, the deed was retained by the husband does not repel the inference otherwise compelling of his intention to make the deed immediately effective as a conveyance of the land. Indeed, plaintiff himself revealed in his testimony a design by the conveyance to take the property out of the inheritance tax category; and delivery was essential to the effectuation of that purpose.

"The essence of delivery is the intent to 'perfect the instrument' and thereby make an immediate transfer of the title to the grantee; and the intent may be deducible from the circumstances or the acts or words of the grantor. [Citations.] * * *"

■ When the grantor of a deed properly executes it and surrenders possession, he is presumed to have divested himself of all title and interest he owned in the property, and some clear and convincing proof to the contrary must be shown before the deed can be properly set aside. *Boys v. Long*, Okl., 268 P.2d 890, 893 (1954).

■ In considering the testimony of appellant and attorney Jones in a light most favorable to appellant and giving her the benefit of all favorable inferences from such testimony, we do not believe that appellee has demonstrated that there is no genuine issue of material fact. *Western Surety Company v. Town of Evansville*, supra. Therefore, the summary judgment was improperly granted. See also, *Dudley v. Eastridge Development Company*, supra.

There is evidence here that Roy McCormick wanted Marie May to have his ranch; that he created a joint tenancy as contemplated by § 34–1–140, W.S.1977 [1]; that he desired to convey to Marie May a ranch in joint tenancy; that as an estate planning device, he wanted to transfer his ranch out of his estate to save probate costs [2]; that it was contemplated by Marie May and Roy McCormick that the latter would remain in possession and receive the income from the ranch during his lifetime. The evidence which we have just delineated, together with favorable inferences, is not inconsistent with vesting title to the ranch in Marie May at the time she was given possession of the deed. If delivery of this deed for the purpose of vesting title and recording during the lifetime of Roy McCormick was not intended as appellee contends, his stated purpose in saving costs may have been frustrated. *Herr v. Herr,* supra.

Roy McCormick, remaining in possession of the ranch and receiving the income from it during his lifetime, does not defeat the vesting of title in Marie May. This is not an uncommon arrangement when the tenants of a joint tenancy deed are parent and child. The court improperly granted summary judgment.

### II

There is no merit to appellant's first issue on appeal. Appellee asserted the invalidity of the deed in question on four theories, namely, incompetency of grantor, invalid delivery, invalidity due to fraud, and to quiet title against appellant. The determination that there was no valid delivery of the deed on the one cause of action rendered the issues moot in the other three causes.

The court having found for appellee on one of the theories and having declared the deed void, there was no purpose in proceeding on the other three theories to see if the court could find other reasons to declare the deed void. However, appellee is free in future proceedings to reassert any one or more of the four theories set out in his original complaint for setting aside the deed.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

1. "A joint tenancy or a tenancy by the entirety as to any interest in real or personal property may be established by the owner thereof, by designating in the instrument of conveyance or transfer, the names of such joint tenants or tenants by the entirety, including his own, without the necessity of any transfer or conveyance to or through a third person." § 34–1–140, W.S.1977.

2. While creating a joint tenancy, as was done here, is not an uncommon device to avoid probate, we express no opinion on whether or not this is a sound estate planning scheme.