**Stephen P. SCHULZ, Appellant (Defendant),**

v.

**Polly L. MILLER, Appellee (Plaintiff).**

**No. 92–31.**

Supreme Court of Wyoming.

Aug. 5, 1992.

---

William R. Fix of Fix & Mulligan, Jackson, for appellant.

Kenneth S. Cohen, Jackson, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

* Chief Justice at time of oral argument.

URBIGKIT, Justice.

Appellant, Stephen P. Schulz, and appellee, Polly L. Miller, established an unmarried familial relationship after the commencement of dating in about 1985 and continued to live together into 1989. In 1990, the "living together" status ended when Mr. Schulz developed another romantic direction following a trip to South America (alone) where he met his newer bride-to-be. Prior to the end of the Schulz–Miller cohabitation, they received a deed to an extremely valuable residential site located on a golf course which was acquired for the purpose of building "their" home on it. After Mr. Schulz had redirected his romantic interest to the lady from Chile, he asked Ms. Miller to reconvey to him any interest in the home site lot. She refused, and this litigation followed, to end in district court with summary judgment in favor of Ms. Miller and against Mr. Schulz in determining that each record owner had a fifty percent interest in the lot.

We agree with the district court and affirm its summary judgment decision.

This home site lot was not realistically subject to partition and the district court decreed in summary judgment that the joint acquisition should be sold and the proceeds divided. To understand the issues presented, we outline, in advance, some essential facts, most of which are undisputed.

Following the commencement of the relationship in 1985, after a period of about a year later, the parties first moved into Ms. Miller's house trailer and then into Mr. Schulz's house to live together with the continued domestic relationship ending in early 1990. Both worked and contributed to their mutually maintained household. Mr. Schulz owned a downtown Jackson, Wyoming retail business with excellent income and Ms. Miller was a bookkeeper with more limited resources.

There came a time when the couple discussed building a house which required the acquisition of a home site, not so easy to do and certainly not so inexpensive in Jackson.

After viewing variant properties with a realtor, Ward Keevert (a friend of Mr. Schulz), the parties came to the realtor's office on July 21, 1989 and signed a pre-printed "Offer, Acceptance & Receipt"—a 1979 Wyoming Association of Realtors purchase agreement form. The sellers accepted and the deal was struck. Mr. Schulz and Ms. Miller agreed to purchase a home site lot on a golf course which would cost $79,500.

The stated purchasers in the agreement were "Stephen P. Schulz & Polly L. Miller" therein referred to as "Purchaser," and the document further provided:

7. Title shall be conveyed to the following named purchaser(s):

as *Stephen P. Schulz and Polly L. Miller.*

Both litigants actually signed as purchasers. The agreement recognized an earnest money deposit, a total purchase price of $79,500 and provision to pay the remaining balance of $54,500 in two expeditiously early installment obligations.

The payments were made and the deed was, in August 1989, executed by sellers, accepted by the purchasers and recorded as prepared by an attorney representing the sellers. Prepared by the attorney on a non-printed form, the conveyance stated as the grantees "Stephen P. Schulz, a single man, and Polly L. Miller, a single woman, as joint tenants with right of survivorship, GRANTEES * * *." The deed was recorded and then given by Mr. Schulz to Ms. Miller "to keep." *Forbes v. Volk*, 358 P.2d 942 (Wyo.1961). *Cf. May v. McCormick By and Through Swallow*, 704 P.2d 709 (Wyo.1985).

The record, in addition to these undisputed facts, further shows that the entire purchase price was paid by Mr. Schulz. It is not only the significant original purchase price which fuels this litigation, but it was suggested in the record and stated in oral argument that by May 1991, the lot had increased in value to around $125,000 from the original 1989 purchase price of $79,500.

With these basic facts established, the issues of dispute can be more easily understood. Mr. Schulz identifies the issues as:

I. Did the trial court err in refusing to consider parol evidence in this action to reform a voluntary conveyance mistakenly conveying a larger estate than was intended?

II. Did the trial court err in granting summary judgment where genuine issues of material fact existed as to the mistaken voluntary conveyance of a larger estate than was intended?

III. Is unilateral mistake by the grantor in a voluntary conveyance sufficient to permit reformation of a deed?

Ms. Miller simplifies her interest and issue to ask: "Is parol evidence admissible to reform the deed to plaintiff and defendant?"

The concept of the ex-boyfriend who now wants his real estate back free and clear of claim by the co-grantee provides the more complex issue in contention that his realtor, Ward Keevert, provided bad legal advice regarding acquisition of the real estate title. Mr. Schulz argues his intention, which he attempted to prove by parol and which creates the issue on appeal at this time by contending a unilateral expectation, was to establish that the only interest Ms. Miller would acquire was "a contingent future interest." This intent, he argues, was deterred by the erroneous legal advice of the realtor and constitutes a unilateral mistake justifying his demand that reformation be granted to limit Ms. Miller's interest as only a contingent future interest[1] to be valuable only if she survived him and they

---

1. This court was not provided by either briefing or by oral argument any exact description of the contingent future interest which Mr. Schulz intended to be different from the tenancy in common, except, by the time of litigation, the co-grantee should be excluded from present right, title and interest despite what both the purchase agreement and the deed had explicitly provided.

Clearly, no argument was provided nor can documentation justify identifying the claimed interest as the estate of a co-tenancy fee simple determinable or fee simple subject to a condition subsequent. *Wood v. Board of County Com'rs of Fremont County*, 759 P.2d 1250 (Wyo. 1988).

continued in cohabitation until his death occurred. Consequently, unilateral mistake derived from faulty advice was his explicit appellate contention. Parol evidence by Mr. Schulz's testimony of the unexpressed intent was to be introduced to reform the executed warranty deed to prove his case.

Actually, the original pleadings do not directly reach this status where Ms. Miller was the initial plaintiff in complaint with prayer for either partition as a co-owner or, if partition could not be achieved, then in the alternative that the property be sold and the proceeds be divided. By amended answer and counterclaim, Mr. Schulz denied her right, title and interest; alleged his interest in fee simple; and, in the nature of a quiet title proceeding, prayed for a decree validating his title in fee simple.

The complaint for partition was filed in April 1990 and, in July 1991, Mr. Schulz filed his second amended answer and counterclaim which, for the first time, presented a claim for relief other than quiet title. Added as requested relief was a count for reformation which specifically addressed a change in the deed but made no reference to reformation of the basic document by which title was acquired—the initial "Offer, Acceptance & Receipt" purchase agreement which established the status for issuance of title. The pleadings, consequently, presented differentiated and alternative demands for relief—first, quiet title alleging no interest in the co-grantee and, secondly, a request for reformation to establish that the intended interest was only a right of survivorship. Although the pleadings allege that the entire purchase price payment had been made by Mr. Schulz, no claim was made by him to recover the gift in money which he had made under the purchase contract. Summary judgment came on Ms. Miller's complaint with establishment of co-ownership which was supplemented by decree provision determining partition was not possible so that the property should be sold and the proceeds be divided.

The principal thrust of the argument of both litigants addresses the form of the deed, e.g., estate in common, joint estate, or a contingent future interest. We find that this direction of attention provides no value for our decision. Factually, this was not a grantor-gift conveyance, but was instead a real estate purchase undertaking executed by both litigants; although thereafter, Mr. Schulz paid the contracted purchase price for both as mutual obligors.

It is obvious that from the standpoint of Mr. Schulz (since he is still alive), whether the deed could have provided either a tenancy in common or joint estate would make no difference in his present effort to divest his prior girlfriend of the vested title interest recorded in her name. What we directly consider, since the joint estate or tenancy in common difference is insignificant, is what the signed document executed by both litigants did establish and then whether that document leaves an issue of fact repelling any proper grant of summary judgment regarding the conveyance which confirmed the original agreement in final execution.

The basic law is well recognized:

> The essential elements of mutual mistake in a written instrument for which a court of competent jurisdiction may grant appropriate relief are that there was an antecedent agreement which the written instrument undertakes to evidence; that a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence; and that in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake was mutual.

*Northern Pacific Railway Co. v. United States,* 277 F.2d 615, 619 (10th Cir.1960).

Once we examine this file in review of the "Offer, Acceptance & Receipt" document (purchase agreement), we recognize that these two litigants agreed how title was to be vested: "Stephen P. Schulz and Polly L. Miller." By this document, each became an equal co-owner and whether by tenancy in common as originally indicated or joint tenancy as ultimately defined in the conveyance makes no difference within this record.

What Mr. Schulz really argues is what he made as a gift to his girlfriend should now be subject to reclamation since the cohabitation relationship ended following his more recent change of plans. It should be made clear that he neither pled nor argued that he made a gift to Ms. Miller of one-half of the $79,500 or, for that matter, that he did not make a gift. He only said that the deed, which means the purchase agreement in legal reality, should be reformed to specifically change the written provisions of both documents—one he signed and the other executed and prepared by the sellers and accepted by him as co-grantee. Reformation would serve to extinguish Ms. Miller's present ownership interest so Mr. Schulz could freely build a house on the site for his present wife.

■ If there is a real issue to be extrapolated from this case, it is whether the gift maker can retain an unexpressed limitation on the totality of the executed gift, unconfirmed in the written agreement, to permit reconsideration after his relational intentions have been altered by acquisition of a more recent subject for his romantic attention. *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986) provides a firm basis for our discussion. Parol evidence would be available to reform the written agreement only on account of a *mutual* mistake.

> " * * * The general rule is that parol evidence may not contradict, vary, or add to deeds. This Court, however, has recognized mutual mistake as an exception, even if the property description is definite and certain. This Court has said that one type of mistake justifying reformation is where the deed fails 'to conform to what both parties intended.' " *Neeley v. Kelsch,* supra, 600 P.2d [979] at 981 [ (Utah 1979) ].

The Wyoming Supreme Court delineated the parole-evidence rule when it said in *Cary v. Manfull,* 41 Wyo. 476, 287 P. 433, 435 (1930), "[n]othing can be added to or taken from the contract, except for fraud or mistake;" and then said in *Russell v. Curran,* 66 Wyo. 173, 206 P.2d 1159, 1166–1167 (1949):

> "It is proper to note also that in *Stoll v. Nagle,* 15 Wyo. 86, 86 P. 26, 28, this court has recognized the rule that parol evidence is admissible to reform an instrument on account of mistake and it was remarked that there can be no doubt of the rule's correctness. In the same case Mr. Justice Beard also said that: 'The mistake, however, must have been a mutual one. There must have been a meeting of the minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the parties. Both the mistake and its mutuality must be established by evidence that is clear and satisfactory.'[" ]

*Cordova,* 719 P.2d at 640–41. Obviously, this is not a faulty real estate description case; this is real estate acquired by two people which was titled in both names.

As this court further said in *Cordova,* 719 P.2d at 641–42 (quoting *Schinnell v. Doyle,* 6 Wash.App. 830, 496 P.2d 566, 568–69 (1972)):

> "Parole evidence is admissible only if a contract is ambiguous as a matter of law. Such evidence should not be introduced for the purpose of creating ambiguity but should be admitted only when the court has determined that parol is necessary in order to explain or remove ambiguity apparent on the face of the instrument. * * * Where a contract is not ambiguous, its meaning should be ascertained from the language of the contract and not from parol evidence concerning it. * * *
>
> " '[W]here there is no ambiguity, all conversations, contemporaneous negotiations, and parol agreements between the parties prior to a written agreement are merged therein. In the absence of accident, fraud or mistake, parol evidence is not admissible for the purpose of contradicting, subtracting from, adding to, or varying the terms of such written instruments.'
>
> "*Fleetham v. Schneekloth,* 52 Wash.2d 176, 178, 324 P.2d 429, 430 (1958). * * * "

Mr. Schulz has thoughtfully provided a series of cases, but we conclude they are unpersuasive for this decision. This is not a scrivener's mutual mistake, unanticipated result situation. *Sunnybrook Children's Home, Inc. v. Dahlem*, 265 So.2d 921 (Miss. 1972); *Nelson v. Harris*, 32 N.C.App. 375, 232 S.E.2d 298 (1977). Nor is the case a grantee's fraud. *Sparks v. Sparks*, 388 S.W.2d 508 (Mo.App.1965). Likewise, the mutuality of any contended mistake is absent since contest regarding the grantee-purchaser designations of the legal documents were not in any regard contended to be contrary to the expectation of the co-grantee. Ms. Miller got what she was offered and that is what she expected. *Huang v. Cheng*, 583 N.Y.S.2d 370 (N.Y.A.D.1992). *Cf. Gablick v. Wolfe*, 469 P.2d 391 (Alaska 1970).

Since the district court was provided no evidence of a mutual mistake, the test of clear, convincing and satisfactory evidence for reformation cannot be met. *Longshaw v. Corbitt*, 4 Ariz.App. 408, 420 P.2d 980 (1966). *See also Norwest Bank Minnesota, N.A. v. Midwestern Machinery Co.*, 481 N.W.2d 875, 881 (Minn.App.1992) (considering the parol evidence rule and the clear and convincing evidence test). In essence, Mr. Schulz contends he did not intend to give Ms. Miller any real ownership even though the written documents executed and authenticated the result to be her co-ownership including the conveyance which he accepted and recorded. Differing from *Longshaw*, this is not the typical boundary dispute reformation case nor is this a case where the unexpressed intention of the grantor is at issue in any regard. *Gregory v. Sanders*, 635 P.2d 795 (Wyo.1981). Furthermore, as earlier noted, this is not a real estate gift conveyance case where the donor subsequently questions the extent of his gift by deed. A third party, the vendor, in accord with these litigants' purchase agreement, conveyed the property as required by the purchase agreement. Consequently, the exception for which Mr. Schulz argues does not apply. *Cf. Twyford v. Huffaker*, 324 S.W.2d 403 (Ky.1958). The gift, such as it was, consisted of the payment of the mutually undertaken obligation to purchase.

As addressed in *Twyford*, mutuality of the mistake as a basis for reformation "need * * * be established when there is a mutuality of obligation, as in a contractual relationship." *Id.* at 406. That is the situation that existed here.

Furthermore, this is not a *Twyford* kind of error in physical description for the involved real estate. The grantor gift conveyance of a half interest in the donor's homestead found in the cited case of *Papke v. Pearson*, 203 Minn. 130, 280 N.W. 183 (1938) is likewise inapplicable. These cases recognize that a gift is unilateral in its nature and, consequently, only a unilateral mistake can occur. There is nothing about this case that comes within the narrow confines of the donor gift conveyance unilateral mistake concept. This man and woman homebuilding program was about as bilateral as can be found.

Two long established principles delineate Wyoming law. For consideration of reformation, the claimed mistake must be mutual, *State Bank of Wheatland v. Bagley Bros.*, 44 Wyo. 244, 11 P.2d 572 (1932); *Stoll v. Nagle*, 15 Wyo. 86, 86 P. 26 (1906), and that mistake and its mutuality must be established by clear and satisfactory evidence. The burden of proof to present evidence that is clear, satisfactory and convincing rests with the party requesting reformation. *Pfister v. Brown*, 498 P.2d 1243 (Wyo.1972); *Grieve v. Grieve*, 15 Wyo. 358, 89 P. 569 (1907).

[W]hen a mistake in a writing is claimed, the burden rests on the party claiming the mistake to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement entered into between the parties; that the mistake was mutual; and that it did not occur by or result from negligence of the party claiming it.

*Pfister*, 498 P.2d at 1245.

■ Where the written document, as an agreement, actually expresses the concurrence of the parties, the court cannot reform the writing for a party into one he thinks he would have made but, in fact,

never did. *State Farm Mut. Auto. Ins. Co. v. Petsch*, 261 F.2d 331 (10th Cir.1958). Courts do not reform a valid agreement of the parties to conform to the unexpressed desires of the participants, regardless of any appealing reasons to do so. *Mullinax Engineering Co. v. Platte Valley Const. Co.*, 412 F.2d 553 (10th Cir.1969).

We agree with the district court that the documentation is determinative regarding reformation within the status of these pleadings in this case. The factual argument of whether the sellers' attorney, in contact with Mr. Schulz and not the buyers' realtor, prepared the deed serves little basis to defeat the entry of summary judgment because the deed was in specific accord with the form required by the purchase agreement which had been mutually executed by these litigants. Additionally, it does not add substance to any assertion about a dispute of fact whether this transaction might be construed to have encompassed a gift made in futuro when the purchase agreement was signed, a gift made in three installments when the purchase price was paid, or a gift which occurred when the deed was executed, recorded and the original instrument which designated the gift was given to the donee.

█ In reality, the transaction can be most accurately delineated as an agreement to make a gift when the purchase agreement was signed, with the gift then finalized and completed by delivery and acceptance of the recorded deed, *B–T Ltd. v. Blakeman*, 705 P.2d 307 (Wyo.1985), all of which, following consummation, is not now subject to parol challenge. Once the deed was executed and delivered, the executory contract (to purchase) became executed, *Bakken v. Price*, 613 P.2d 1222, 1227 (Wyo.1980), and the gift became a fact. *Hundley v. Neely*, 365 P.2d 196 (Wyo.1961). Consequently, we agree with

the district court that the documentation is determinative and parol attack by a participant on the completed transaction after consummation is not available. "[W]here the words used in a deed clearly designate the estate conveyed, there is no need to resort to rules of construction or to give judicial interpretation." *Witzel v. Witzel*, 386 P.2d 103, 104 (Wyo.1963).

These two litigants authenticated by signed documents that each was to be a co-owner of real estate to be acquired in their common interest as their home site. Certainly, under any construction of the pleadings or evidentiary record, there is no issue presented contending Ms. Miller was obligated to repay one-half of the value of the property or its purchase cost as the portion of the transaction which constituted a gift to her in recorded real estate title interest. The written transaction was not defined by a condition subsequent, namely a change in cohabitation interest of one of the participants.

We similarly find no merit in Mr. Schulz's argument that he should be permitted at trial to testify about a differing intent regarding the form and effect of the deed. Although that instrument was received, accepted, recorded and given to Ms. Miller, it was not the document of decision since, within its terms, that deed only carried into effect what had been stated in the purchase agreement whereby these parties jointly purchased the property for their contemplated future home.[2]

We agree with the district court's rejection of parol evidence to impeach the recorded deed since that document only accommodated the earlier agreement as executed by both parties in finite recognition of the accomplished gift.[3] Extrinsic evidence will not be used to contradict the plain meaning of a clear and unambiguous

---

2. We need not pursue the inexcusable negligence defense to reformation. First, the inquiry would present factual questions probably not properly resolved by summary judgment; but more directly considered, this is not a challenged written agreement which reduced the understanding to writing. *Bagley Bros.*, 44 Wyo. 244, 11 P.2d 572. The signed agreement was

not the subject of reformation challenge by Mr. Schulz for this appeal.

3. We do not further continue to expand reformation to accommodate a "unilateral" mistake since we have no evidence of either a unilateral or bilateral mistake in the original documents signed by both participants.

agreement. *Kerper v. Kerper*, 780 P.2d 923 (Wyo.1989).

The only real issue of fact in this case was raised by the question of contributory conduct by Mr. Schulz's own realtor who handled the purchase; the realtor who represented the sellers; and, perforce, the attorney who prepared the deed in behalf of the sellers. Who made the decision to have title in a survivorship estate rather than a tenancy in common may be in dispute, but it certainly does not make any difference at this stage of the proceeding.

Reconstruction of the written record by reformation through parol evidence to take back what was once given in order for it to be given to another was appropriately rejected by the district court. *Nelson v. Nelson*, 740 P.2d 939 (Wyo.1987).

Affirmed.

CARDINE, Justice, dissenting.

The purchase offer and acceptance agreement indicates only that appellant and appellee are the purchasers of this real estate. From the writing itself, it is impossible to ascertain who should pay, whether there was a gift, or how title should be held. Appellant was lawfully entitled to introduce parole evidence, and the district court should have allowed it to arrive at the intent of the parties to this transaction. This is not to say that appellant should prevail—only that parole evidence offered by him should have been received and considered by the court. For this reason, I would reverse and remand.